**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SEVEN UP PETE VENTURE, an
Arizona general partnership dba
Seven Up Pete Joint Venture;
CANYON RESOURCES CORPORATION, a
Delaware corporation; JEAN MUIR;
IRENE HUNTER, Doctor; DAVID
MUIR; ALICE CANFIELD; TONY
PALAORO; JUNE E. ROTHE-
BARNESON; AMAZON MINING
COMPANY, a Montana partnership;
PAUL ANTONIOLI; STEPHEN
ANTONIOLI; JAMES E. HOSKINS,
              *Plaintiffs-Appellants,*

                 v.

BRIAN SCHWEITZER, Governor of
the State of Montana; RICHARD
OPPER, Director of the Montana
Department of Environmental
Quality,
              *Defendants-Appellees.*

No. 06-35384

D.C. No.
CV-00-00013-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
November 7, 2007—Seattle, Washington

Filed April 21, 2008

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

4157

Opinion by Judge Canby

## COUNSEL

Sean Connelly, Reilly, Pozner & Connelly, LLP, Denver, Colorado, for the plaintiffs-appellants.

Anthony Johnstone, Assistant Attorney General, Helena, Montana, for the defendants-appellees.

## OPINION

CANBY, Circuit Judge:

The primary question before us is whether the Eleventh Amendment precludes federal jurisdiction over an action seeking compensation under the Fifth and Fourteenth Amendments for a taking of property by a State.

The factual setting of this case is simple enough; the procedural context is more complicated. Seven Up Pete Venture ("the Venture") and other plaintiffs acquired leases of Montana state property for the purpose of mining gold, silver and other trace minerals.[1] Subsequently, voters of Montana

---

[1] Except in the "Factual History" section of this opinion, all references to "the Venture" include the other plaintiffs as well as Seven Up Pete Ven-

enacted Initiative 137 ("I-137"), which banned open-pit mining for gold or silver by the cyanide heap leaching process. The Venture then brought this reverse condemnation action in federal district court against the Governor of Montana and the Director of the Montana Department of Environmental Quality in their official capacities. The Venture contended that I-137 effected a regulatory taking of their property, for which the State of Montana must pay just compensation under the Fifth and Fourteenth Amendments of the United States Constitution. At the same time, the Venture brought a reverse condemnation action in Montana state court. The Venture then obtained a stay of the federal proceedings pending resolution of the state claims. After the Montana Supreme Court rejected the Venture's claims, the district court dismissed the federal takings claims under the Eleventh Amendment and, in the alternative, under the doctrine of issue preclusion. The Venture now appeals that dismissal.

We join a number of our sister circuits and hold that the Eleventh Amendment bars a reverse condemnation action brought in federal court against state officers in their official capacities. We therefore affirm the district court's dismissal of the Venture's takings claims on that ground without reaching the question of issue preclusion.

## BACKGROUND

### I. Factual History[2]

In 1991, the Venture acquired six leaseholds ("the Mineral Leases") of state-owned mineral estates in the vicinity of Lin-

---

ture.

[2]Because the Montana Supreme Court recited the facts underlying this litigation in some detail in a published opinion, we provide only a brief summary of the events. *See Seven Up Pete Venture v. State*, 114 P.3d 1009 (Mont. 2005).

coln, Montana. The lands encompassed by the Mineral Leases comprise an area known as the "McDonald Project." According to feasibility studies, the McDonald Project contains more than 9 million ounces of gold and 20 million ounces of silver. Approximately half of these minerals could be recovered profitably through open-pit extraction combined with cyanide leaching of the ore. In addition to its interest in the McDonald Project, the Venture owns surface leases as well as other surface and mineral interests in two other areas also located east of Lincoln, Montana. These areas are designated as "Keep Cool Prospect" and "Seven Up Pete Project." The remaining plaintiffs own surface or mineral interests in the general vicinity of Lincoln, Montana.

Throughout the mid-1990s, the Venture and the State of Montana engaged in discussions regarding the environmental impact and viability of mining in the McDonald Project. Neither the Venture nor any other plaintiff ever obtained a permit to begin mining operations, as required by Montana Code Annotated section 82-4-335(1), and no mining has in fact taken place to date in the Project.

In November 1998, Montana became the first state to prohibit open-pit mining using cyanide heap leaching. It did so by passing ballot initiative I-137, which, as codified, provides:

> (1)   Open-pit mining for gold or silver using heap leaching or vat leaching with cyanide ore-processing reagents is prohibited except as described in subsection (2).

> (2)   A mine described in this section operating on November 3, 1998, may continue operating under its existing operating permit or any amended permit that is necessary for the continued operation of the mine.

Mont. Code Ann. § 82-4-390.

According to the complaint, there are no gold or silver recovery processes other than open-pit mining and cyanide leaching that will allow economically viable production of the gold and silver in the McDonald Project. In late 1999, the Montana Department of Environmental Quality informed the Venture that, in light of the passage of I-137, it had halted its review of the Venture's pending application for a mining permit. The Montana Department of Natural Resources and Conservation later informed the Venture that the six Mineral Leases terminated of their own accord due to the Venture's failure to "diligently pursue acquisition of a permit under Montana's Metal Mine Reclamation Act." *Seven Up Pete Venture*, 114 P.3d at 1015.

## II.  Procedural History

In April 2000, the Venture filed a complaint in federal court alleging, among other things, that I-137 worked a taking of their property without just compensation in violation of the Fifth and Fourteenth Amendments. On the same day, the Venture also filed a complaint in state court, which alleged, among other things, that I-137 effectuated a regulatory taking of its property rights without just compensation under Montana law.

In the state complaint, the Venture advised the court that it "reserve[d] [its] federal claims" for a separate federal action, but was notifying the state court of its "federal claims so that Plaintiffs' state claims may be considered and adjudicated in light of those claims, and not for determination by [the state] Court of [its] federal claims."

The federal district court dismissed the federal Fifth Amendment claim without prejudice on the ground that the suit for compensation was not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), because the Venture had not finished pursuing the procedures Montana provides for

obtaining just compensation. The district court also concluded that the Venture had preserved its right, pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), to "return to federal court at the conclusion of the state court proceedings if it remains necessary to litigate their reserved federal claims." Accordingly, the district court dismissed the Venture's taking claims without prejudice and granted its motion to stay the case pending resolution of the state court proceedings.

The Montana trial court subsequently granted summary judgment in favor of the state in the state court proceedings, and the Montana Supreme Court affirmed. The Montana Supreme Court held that the Venture was not entitled to just compensation because "[t]he guarantees of the Fifth and Fourteenth Amendments apply only when a constitutionally protected property interest is at stake." *Seven Up Pete Venture*, 114 P.3d at 1017 (alterations and internal quotation marks omitted). The Court reasoned that the Venture's " 'opportunity' to seek a permit, which required convincing the State that this cyanide leaching project was appropriate, did not constitute a property right. The State had wide discretion to reject the Venture's permit application, even without the enactment of I-137." *Id.* at 1019.

The United States Supreme Court denied the Venture's petition for certiorari to review the state court judgment. The Venture timely notified the district court and filed a motion to reopen the case and reinstate the federal takings counts. The district court reopened the case but dismissed the Venture's takings claims with prejudice. It held that the Eleventh Amendment barred the Venture's takings claims because they seek monetary relief against state officials in their official capacities. In the alternative, the district court held that it was required to accord issue-preclusive effect to the Montana Supreme Court's decision.[3] The Venture appeals both grounds for dismissal.

---

[3]Although the district court had earlier observed that the Venture had preserved its right under *England* to return to federal court for adjudica-

**DISCUSSION**

**[1]** The Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private parties against unconsenting States.[4] *See Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). This jurisdictional bar remains effective, if a bit less absolute, in cases like this where state officials, instead of the State itself, are the subjects of suit. Generally speaking, "a suit [brought] against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). If, however, the plaintiffs seek prospective injunctive relief against the state official for a violation of federal law, the Eleventh Amendment does not bar the action. *Ex parte Young*, 209 U.S. 123 (1908); *Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

These general principles guide our analysis of the two issues that we decide in this case: 1) whether the Takings Clause occupies a unique place among constitutional protections in that, by virtue of its built-in remedy of just compensation, it overrides Eleventh Amendment immunity and 2) if not, whether the doctrine of *Ex parte Young* applies to permit this suit against the state officials. Before turning to the merits of the first issue, we satisfy ourselves that this court has not already considered and decided it.

---

tion of the federal constitutional issues, the court held that the intervening Supreme Court decision in *San Remo Hotel L.P. v. City & County of San Francisco*, 545 U.S. 323, 340-48 (2005), required the district court to give issue-preclusive effect to the Montana decision.

[4]"Immunity under the Eleventh Amendment is a question of law that we review de novo." *Yakama Indian Nation v. Wash. Dep't. of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999).

### I. *Broughton* and *Stare Decisis*

**[2]** This court upheld the dismissal of a reverse condemnation action on Eleventh Amendment grounds in *Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 620 (9th Cir. 1992). One might well assume that *Broughton* thus ends the matter and controls this case, but *Broughton* was directed at a different argument. In *Broughton*, the plaintiff pursued a reverse condemnation action in federal court alleging that Washington and Oregon effected an unconstitutional regulatory taking of its property by failing to issue a land use permit. *Id.* at 618. The plaintiff's argument assumed that the Eleventh Amendment ordinarily applied in reverse condemnations actions, but asserted that Congress had abrogated the immunity of Washington and Oregon in the statute approving the Columbia River Gorge Compact. *Id.* at 619. The court found no such abrogation in the statute, and accordingly held the suit to be barred by the Eleventh Amendment. *Id.* at 619-20. The argument presented in today's case — that the self-executing nature of the Takings Clause itself defeats Eleventh Amendment immunity — was neither raised nor discussed.

**[3]** Because *Broughton* did not directly address the latter issue, it does not control our decision. It is true that "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (per curiam). But *Broughton* involved no such reasoned consideration of the issue before us. Reconsideration of an issue may be appropriate "where the later panel is convinced that the earlier panel did not make a deliberate decision to adopt the rule of law it announced." *Id.* at 915. That is the situation here: we are convinced that *Broughton* made no deliberate decision rejecting the proposition that the self-executing nature of the Takings Clause overcame Elev-

enth Amendment immunity. In deciding that question today, we are not constrained by *Broughton*.[5]

## II.   Self-Execution and the Eleventh Amendment

### A.   Self-Execution

**[4]** The Supreme Court has long recognized that the just compensation clause of the Fifth Amendment is self-executing: " 'the right to recover just compensation . . . [i]s guaranteed by the Constitution' " and " '[s]tatutory recognition [i]s not necessary.' " *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (emphasis omitted) (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)). From this fact, the Venture argues that the constitutional right to compensation overcomes the state's Eleventh Amendment immunity. We reject this contention; we conclude that the constitutionally grounded self-executing nature of the Takings Clause does not alter the conventional application of the Eleventh Amendment.

**[5]** The Supreme Court's reverse condemnation cases have not spoken directly to our question. Neither *First English*, a suit against a county, nor *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999), a suit against a municipality, controls the Eleventh Amendment analysis, for both cases involved state entities not protected by the Amendment. *See, e.g., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 & n.19 (1979) ("[T]he Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exer-

---

[5]At least two cases decided since *Broughton* contained dicta suggesting that it was an open question in this circuit whether reverse condemnation actions could be brought against an unconsenting State in federal court. *See Spoklie v. Montana*, 411 F.3d 1051, 1058 (9th Cir. 2005); *Taylor v. Westly*, 402 F.3d 924, 936 (9th Cir. 2005).

cise a 'slice of state power.' ").**⁶** In sum, *First English* expounds the self-executing character of the Takings Clause and the resulting obligation by the states to provide a specific remedy for takings in their own courts, but does not directly address its interplay with the Eleventh Amendment. *See* Richard H. Seamon, *The Asymmetry of State Sovereign Immunity*, 76 Wash. L. Rev. 1067, 1072-80 (2001). This is the issue to which we now turn.

## B.   Eleventh Amendment and Sovereign Immunity

**[6]** The Supreme Court addressed the interplay of sovereign immunity and another "self-executing" constitutional provision in *Reich v. Collins*, 513 U.S. 106 (1994), a case addressing the remedy required under the Due Process Clause for unconstitutionally levied taxes. The Court concluded that a *state court* could not wholly deny a remedy, stating that " 'a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment,' the sovereign immunity States traditionally enjoy in their own courts notwithstanding." *Id.* at 109-10 (quoting *Carpenter v. Shaw*, 280 U.S. 363, 369 (1930)). The Court also observed parenthetically that, although the State could not invoke its sovereign immunity to avoid refunding an unconstitutional tax, the Eleventh Amendment nevertheless ordinarily barred such actions from *federal court*. *Id.* at 110. If sovereign immunity may not stand in the way of recovery in state court for unconstitutionally levied taxes because of the "self-executing" character of the Due Process

---

**⁶**Unsurprisingly, then, the *First English* Court did not place any analytical weight on sovereign immunity, mentioning the term only once and, even then, only to paraphrase the government's argument. *First English*, 482 U.S. at 316 n.9 ("The Solicitor General urges that the prohibitory nature of the Fifth Amendment, combined with principles of sovereign immunity, establishes that the Amendment itself is only a limitation on the power of the Government to act, not a remedial provision." (citation omitted)).

right at stake, it follows that the state courts must also be available to adjudicate claims brought under the federal Takings Clause, which is also self-executing. And, as *Reich* states, this constitutionally enforced remedy against the States in state courts can comfortably co-exist with the Eleventh Amendment immunity of the States from similar actions in federal court.

**[7]** It is not surprising, then, that every court of appeals to have faced this question has expressly or implicitly applied the *Reich* rationale and held that the Eleventh Amendment bars Fifth Amendment reverse condemnation claims brought in federal district court. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 526-28 (6th Cir. 2004) ("[The State] enjoys sovereign immunity in the federal courts from [a] federal takings claim . . . ."); *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994) ("[A] Fifth Amendment inverse condemnation claim brought directly against the State . . . is . . . barred by the Eleventh Amendment."); *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) (same); *Citadel Corp. v. Puerto Rico Highway Auth.*, 695 F.2d 31, 33 n.4 (1st Cir. 1982) (per curiam) (same); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980) (same). At least one commentator has agreed. *See* Richard H. Seamon, *supra*, at 1080-87.[7]

There is one additional wrinkle that must be added to the analysis, however. Five years after its decision in *Reich*, the Supreme Court decided *Alden v. Maine*, 527 U.S. 706 (1999). *Alden* held that the immunity of the States from suit without their consent was a fundamental aspect of sovereignty, which

---

[7]Some earlier articles, written before the Supreme Court's decision in *Reich*, took a different view. *See* Vicki C. Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity*, 98 Yale L.J. 1, 115 n.454 (1988); Jack M. Beermann, *Government Official Torts and the Takings Clause: Federalism and State Sovereign Immunity*, 68 B.U. L. Rev. 277, 338-39 (1988).

the States enjoyed before the adoption of the Constitution and retained thereafter "except as altered by the plan of the [Constitutional] Convention or certain constitutional Amendments." *Id.* at 713. Accordingly, Congress lacked the power under Article I of the Constitution to enact legislation subjecting the States to suit *in state courts*. *See id.* at 712. The Eleventh Amendment was simply a recognition of a two-part presupposition underlying the Constitution: (1) that each State is sovereign, and (2) that immunity from suit without the State's consent is inherent in sovereignty. *Id.* at 729.

From this formulation, the Venture draws some interesting arguments. First, the Venture assumes, justifiably enough, that there must be some forum in which the self-executing constitutional guarantee of just compensation for taking of property may be enforced. Thus, the Takings Clause must be capable of overcoming State sovereignty. *Alden*, however, makes it clear that Eleventh Amendment immunity is not unique, but is simply one expression of the total sovereign immunity of the States, applicable equally in federal and state court. Therefore, the Venture reasons, the self-executing dominance of the Takings Clause over State immunity applies equally in state and federal court.

We decline to adopt the Venture's "forum-neutral" conception of sovereign immunity for several reasons. First, although the Court in *Alden* viewed the Eleventh Amendment as a recognition of, rather than the origin of, sovereign immunity of the States, it nowhere commanded that the immunity be treated exactly the same for all purposes in both federal and state courts. It certainly did not purport to repudiate the command of the Eleventh Amendment precluding suits by private parties against unconsenting States in federal court. Moreover, the Court discussed *Reich* with approval, noting that the remedy against the State in *Reich* arose "from the Constitution itself; *Reich* does not speak to the power of Congress to subject States to suits in their own courts." *Alden*, 527 U.S. at 740. Nothing in this passage suggests or requires a change

in the regime addressed in *Reich*: that the State may be sued in its own courts (but not in federal court) for damages arising from violation of a self-executing constitutional clause.

**[8]** We therefore conclude that the Eleventh Amendment bars reverse condemnation actions brought in federal court against state officials in their official capacities.[8] In reaching this conclusion, we join the only sister circuit to have addressed the interplay of the Takings Clause and the Eleventh Amendment since *Alden*. *See DLX, Inc.*, 381 F.3d at 528 (quoting *Alden*, 527 U.S. at 712).

## III.  Applicability of *Ex parte Young*

**[9]** As its last resort, the Venture contends that the strictures of the Eleventh Amendment may be avoided by viewing its suit as one seeking injunctive relief against state officers to force them to adhere to the Constitution, as in *Ex Parte Young*. The applicability of the *Ex parte Young* exception turns on whether federal takings actions are properly characterized as seeking prospective or retrospective relief. A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief "inevitably come[s] from the general revenues of the State . . . , and thus . . . resembles far more closely [a] monetary award against the State itself," which is forbidden under the Eleventh Amendment. *Edelman,* 415 U.S. at 665. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need conduct only a 'straightforward inquiry into whether the complaint [1)] alleges an ongoing violation of federal law and [2)] seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration omitted) (quoting *Idaho v. Coeur d'Alene*

---

[8]The Venture does not contend that the Montana state courts have failed to provide adequate procedures to adjudicate its just compensation claim.

*Tribe*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

**[10]** It is impossible to characterize the relief sought by the Venture as prospective. A reverse condemnation action seeks, "in a strict sense[,] . . . not just compensation per se but rather damages for the unconstitutional denial of such compensation." *Del Monte Dunes*, 526 U.S. at 710. From a remedial perspective, then, "just compensation" is on all fours with traditional monetary damages, which are the quintessential form of retrospective relief. Thus, reverse condemnation actions cannot qualify as claims for prospective relief, and *Ex parte Young* consequently does not apply.

## CONCLUSION

The Eleventh Amendment bars the Venture's reverse condemnation action brought in federal court against Montana's officials in their official capacities. We affirm the district court's dismissal of the Venture's action on this ground and do not reach the question of issue preclusion.

**AFFIRMED.**