**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CARLO JACHETTA,
                    *Plaintiff-Appellant,*

          v.                                    No. 10-35175

UNITED STATES OF AMERICA;                        D.C. No.
BUREAU OF LAND MANAGEMENT;                    3:08-cv-00262-RRB
DEPARTMENT OF PUBLIC FACILITIES,
STATE OF ALASKA,                                 OPINION

                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
May 5, 2011—Anchorage, Alaska

Filed August 1, 2011

Before: Arthur L. Alarcón, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

9823

**COUNSEL**

Samuel J. Fortier, Fortier & Mikko, P.C., Anchorage, Alaska, for the plaintiff-appellant.

Justin R. Pidot, Assistant United States Attorney, Washington, DC, for defendant-appellee United States of America.

Sean P. Lynch, Assistant Attorney General, Juneau, Alaska, for defendant-appellee State of Alaska.

## OPINION

BYBEE, Circuit Judge:

In 1971, William Carlo Jachetta applied for a 160-acre Native allotment comprised of two parcels (Parcel A and Parcel B) but, because of an error of the United States government, his application was initially processed only as a request for Parcel A, which the Bureau of Land Management ("BLM") issued to Jachetta in 1986. In 2004, after long and complicated administrative proceedings, the BLM finally issued Jachetta his allotment for Parcel B. By this time, however, Parcel B had been used as a "material site" by the State of Alaska Department of Transportation ("Alaska" or the "State") and by the Alyeska Pipeline Service Company ("Alyeska") who, among other things, had extracted over 700,000 cubic yards of gravel from the allotment. Dissatisfied with the physical condition of Parcel B, Jachetta sued the BLM, Alaska, and Alyeska in federal court, alleging causes of action for inverse condemnation, injunctive relief, nuisance, breach of fiduciary duties, and civil rights violations. The district court dismissed Jachetta's action against the BLM and Alaska on the basis of sovereign immunity, and Jachetta appeals the dismissal to this court. We hold that sovereign immunity bars Jachetta's entire action against Alaska but, at this point, only part of his action against the BLM.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 1971, Jachetta, an Alaska Native, applied to the Bureau of Indian Affairs ("BIA") for a Native allotment

under the Alaska Native Allotment Act of 1906. Although Jachetta sought a 160-acre allotment—comprised of a 50-acre parcel (Parcel A) and a 110-acre parcel (Parcel B)—the BIA erroneously omitted any reference to the 110-acre parcel when it accepted his application. Consequently, when the BLM approved Jachetta's application in 1986, the BLM issued Jachetta an allotment only for Parcel A. Though by this time Jachetta had realized the BIA's error and had filed a request with the BLM to amend his application to reflect that he was also seeking an allotment for Parcel B, the BLM denied his request. Jachetta appealed the BLM's decision and, after protracted administrative proceedings, finally received an allotment for Parcel B in July 2004.

During this time, Parcel B did not remain untrammelled. Before the BLM issued Jachetta his allotment for Parcel B, the BLM granted permits to third parties, including Alaska and Alyeska, for the use of Parcel B as a "material site." Since 1973, Alaska and Alyeska have removed over 700,000 cubic yards of gravel from Parcel B which, according to Jachetta, created a giant crater on the parcel and transformed the parcel into a moonscape. Once Jachetta received his allotment for Parcel B, he sued the BLM, Alaska, and Alyeska, seeking monetary and injunctive relief for the gravel extracted by Alaska and Alyeska and for Alyeska's alleged destruction of vegetation, removal of trees and other resources, placement of barriers, and prevention of Jachetta's "rightful use of occupancy" of Parcel B. Specifically, Jachetta brought five causes of action: (1) *inverse condemnation* against the State and Alyeska for "extracting and carrying off rock, sand and gravel [from Parcel B] without compensati[on]"; (2) *injunctive relief* against all defendants to prevent any future inverse condemnation; (3) *nuisance* against all defendants for "contaminating or otherwise polluting [Parcel B]"; (4) *breach of fiduciary duties* against the BLM for, among other things, failing to preserve the original character of Parcel B; and (5) *civil rights violations* under 42 U.S.C. §§ 1983 and 1985 against all defendants for conspiring among themselves to destroy Parcel

B. In his prayer for relief, Jachetta requested an injunction and monetary damages equivalent to the fair market value of the resources extracted from his land.

The BLM filed a motion to dismiss, arguing that sovereign immunity barred Jachetta's action against the United States, that the action was barred by the statute of limitations, and that Jachetta's complaint failed to state claims upon which relief can be granted. Alaska also filed a motion to dismiss, which argued only that the Eleventh Amendment barred Jachetta's action against the State. The district court held that federal sovereign immunity barred Jachetta's action against the BLM and dismissed Jachetta's action against the BLM for lack of subject matter jurisdiction. The district court also held that Alaska was immune from suit under the Eleventh Amendment and granted Alaska's motion to dismiss. Jachetta has timely appealed the district court's rulings to this court.

## JURISDICTION AND STANDARD OF REVIEW

Although Jachetta's action against Alyeska is still pending before the district court, the district court entered two judgments—one dismissing Jachetta's action against the BLM, and one dismissing Jachetta's action against Alaska— in which it expressly certified that there was no just reason to delay the entry of judgment in favor of these two parties. Because the district court complied with Federal Rule of Civil Procedure 54(b), we have jurisdiction under 28 U.S.C. § 1291. *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 840 (9th Cir. 2003). We review de novo the district court's dismissals on the grounds of state and federal sovereign immunity. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004).

## DISCUSSION

This appeal raises two issues: (1) whether federal sovereign immunity bars Jachetta's action against the BLM; and (2)

whether the Eleventh Amendment bars Jachetta's action against Alaska. We discuss each issue in turn.

## A.   *Federal Sovereign Immunity*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Before we may exercise jurisdiction over any suit against the government, we must have "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923-24 (9th Cir. 2009) (discussing the relationship between sovereign immunity and subject matter jurisdiction). The government's waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Here, Jachetta points to several statutes that he claims waive the sovereign immunity of the United States: (1) the Federal Tort Claims Act ("FTCA"); (2) 25 U.S.C. § 345, which authorizes actions for Native allotments; (3) 25 U.S.C. § 357, which allows states to condemn Native allotments for a public purpose; (4) the general jurisdiction provision 28 U.S.C. § 1343(a)(3); and (5) two civil rights provisions, 42 U.S.C. §§ 1983 and 1985. Of these, we conclude that only the FTCA may waive the BLM's sovereign immunity for some, but not all, of Jachetta's claims.

### 1.   The Federal Tort Claims Act

**[1]** The FTCA authorizes private tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b)(1); *see United States v. Olson*, 546 U.S. 43, 44 (2005). Accordingly, if Alaska law imposes tort liability upon a private person for any of the claims alleged in Jachetta's complaint, the FTCA may waive the BLM's sovereign immunity. *See Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007) ("[T]he party seeking federal jurisdiction . . . must therefore demonstrate that Alaska law would recognize a [tort] cause of action . . . against a private individual for like conduct."); *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995) ("To recover under the FTCA, the [plaintiff] must show the government's actions, if committed by a private party, would constitute a tort in Montana."); *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992) ("[T]he FTCA directs us to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity. If the law of that state makes private parties liable . . . then the United States is liable for the same.").

**[2]** Here, the district court held that the FTCA did not waive sovereign immunity because Jachetta's complaint did not include any claims that are torts under Alaska law. The district court was only partly correct. Counts 1, 2, and 5 of Jachetta's complaint—styled as causes of action for inverse condemnation, injunctive relief to prevent future unconstitutional takings, and violations of federal civil rights statutes—clearly are not torts under Alaska law; nor could they be, as they do not allege violations of Alaska law. Rather, these counts allege that the BLM violated Jachetta's federal civil rights and deprived Jachetta of his federal constitutional rights. Although these claims may be characterized as constitutional torts, they are not actionable under the FTCA because any liability would arise under federal rather than state law. Accordingly, the FTCA does not provide a waiver of sovereign immunity for these claims. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Delta Sav. Bank v. United States*, 265 F.3d 1017,

1024-25 (9th Cir. 2001) (holding that the FTCA does not waive the government's sovereign immunity for claims alleging violations of 42 U.S.C. § 1986); *see also Love*, 60 F.3d at 644 ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (en banc) ("[T]he FTCA was not intended to redress breaches of federal statutory duties." (citation omitted)).

**[3]** By contrast, Count 3 alleges a cause of action for nuisance, which clearly is a state law tort. Under Alaska law, "[a] nuisance is a 'substantial and unreasonable interference with the use or enjoyment of real property.' " *Maddox v. Hardy*, 187 P.3d 486, 498 (Alaska 2008) (quoting Alaska Stat. § 09.45.255). This definition captures a classic tort, *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 87, at 622 (5th ed. 1984) [hereinafter *Prosser and Keeton*] ("Private nuisance *is a tort* that protects the interest of those who own or occupy land from conduct committed with the intention of interfering with a particular interest—the interest in use and enjoyment." (emphasis added)), as Alaska courts have recognized, *see, e.g., Lybrand v. Trask*, 31 P.3d 801, 803 (Alaska 2001) (stating that the defendants "alleged various *tortious* . . . activities, including trespass, *nuisance*, and misrepresentation" (emphasis added)); *Parks Hiway Enters, LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 666 & n.45 (Alaska 2000) (discussing the tort of private nuisance under Alaska law and citing to the Restatement (Second) of Torts). We thus hold that Count 3 of the complaint brings a state law tort claim and, accordingly, that the FTCA may provide a waiver of sovereign immunity for this claim. *See Lhotka v. United States*, 114 F.3d 751, 753-54 (8th Cir. 1997) (holding that the plaintiffs stated a prima facie case of nuisance under Minnesota law and reversing the district court's dismissal of their FTCA action); *Bartleson v. United States*, 96 F.3d 1270, 1274-76 (9th Cir. 1996) (holding that California property owners could proceed against the United States in their FTCA action under a permanent nuisance theory); *Huffman v. United*

*States*, 82 F.3d 703, 705-06 (6th Cir. 1996) (holding that genuine issues of fact precluded summary judgment in the plaintiff's FTCA action, which alleged a nuisance claim under Kentucky law).

**[4]** We now turn to Count 4, which brings a claim for breach of fiduciary duties. Under Alaska law, breach of fiduciary duty may be either a tort claim or a contract claim. Citing *Clemensen v. Providence Alaska Medical Center*, 203 P.3d 1148 (Alaska 2009), the district court concluded that Count 4 was a contract claim because "[t]he Alaska Supreme Court has held that where the injury suffered by a breach of fiduciary duty is economic, the claim sounds in contract, not in tort." With respect, the district court has misread *Clemensen*. *Clemensen* did not hold that the nature of the injury determines whether breach of fiduciary duty is a tort claim or a contract claim; rather, *Clemensen* held that "[w]hether a claim of breach of fiduciary duty sounds in tort or contract depends on the *source* of the fiduciary duty." *Id.* at 1151 n.12 (emphasis added).

**[5]** Under Alaska law, there are three possible sources of a fiduciary duty: (1) the fiduciary duty may be imposed by law independent of any contractual undertaking between the parties; (2) the fiduciary duty may be imposed by an explicit contractual promise; or (3) the fiduciary duty may be "implied by law as a result of a contractual undertaking" between the parties. *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1089-90 (Alaska 2002). In the first scenario, Alaska treats breach of fiduciary duty as a tort claim; in the second, as a contract claim; and in the third, as a hybrid claim, which Alaska treats as a contract claim for determining the governing statute of limitations and as a tort claim for determining the appropriate measure of damages. *See id.*; *see also Clemensen*, 203 P.3d at 1151 n.12. Because Jachetta's complaint does not reveal the existence of any contractual undertaking between Jachetta and the BLM—and the BLM does not claim that there is a contract—the only possible source of the fiduciary duty alleg-

edly owed by the BLM to Jachetta must arise out of statutory or common law. Thus, Jachetta's breach of fiduciary duties claim sounds in tort. *Accord J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action."); *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 369 (7th Cir. 1979) ("Liability for breach of a duty imposed by statute or case law and not by contract is in tort."); *Prosser and Keeton* § 92, at 656 ("Obligations imposed by law are tort obligations."). And the FTCA may waive sovereign immunity for this claim. *See Marlys Bear Med. v. United States ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1218 (9th Cir. 2001) (permitting an FTCA action in which the plaintiff brought a breach of fiduciary duty claim where Montana law allowed tort claims for breach of fiduciary duty regardless of the source of that duty).

Although Counts 1 through 5 of Jachetta's complaint clearly delineate causes of action for inverse condemnation, injunctive relief, nuisance, breach of fiduciary duties, and civil rights violations, Jachetta vigorously argues that his complaint states an additional cause of action for trespass and that trespass is a tort for which the FTCA waives sovereign immunity. Jachetta's argument fails for two reasons. First, his complaint never actually asserts a cause of action for trespass. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) ("[C]ourts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action." (internal quotation marks omitted)). And, second, Jachetta never argued before the district court that his complaint brought a trespass claim against the BLM nor that the FTCA waived sovereign immunity for that claim. Because Jachetta failed to present his argument to the district court, it has been waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

### 2. 25 U.S.C. § 345

**[6]** Section 345 of Title 25 provides in part that "persons who are . . . entitled to an allotment of [Indian] land under any

law of Congress . . . may commence . . . [an] action, suit, or proceeding . . . in the proper district court." The district courts "are given jurisdiction" and "the United States [shall be] party defendant." 25 U.S.C. § 345.

**[7]** As interpreted by the Supreme Court, § 345 performs two functions. First, it confers jurisdiction to the district courts over two types of cases: those "seeking the issuance of an allotment" and those "involving the interests and rights of the Indian in his allotment . . . after he has acquired it." *United States v. Mottaz*, 476 U.S. 834, 845 (1986) (internal quotation marks omitted). And, second, it "waives the Government's immunity [but] only with respect to the former class of cases: those seeking an original allotment." *Id.* at 845-46; *see also Pinkham v. Lewiston Orchards Irrigation Dist.*, 862 F.2d 184, 187 (9th Cir. 1988) ("In *Mottaz*, the Supreme Court made clear that section 345 waives the government's immunity only with regard to . . . cases seeking an original allotment, and not those involving the interests and rights in an allotment after it has been acquired."). Here, it is undisputed that the BLM has already granted Jachetta an allotment for Parcel B. Accordingly, Jachetta's action cannot be an "action[ ] *for* [an] allotment[ ]" and § 345 cannot waive the BLM's sovereign immunity. *Mottaz*, 476 U.S. at 846 (internal quotation marks omitted). To the extent Jachetta identifies 28 U.S.C. § 1353 as yet another source of an alleged waiver of the government's sovereign immunity, we need not analyze this source separately. We have held that "28 U.S.C. § 1353 is a recodification of the jurisdictional portion of § 345." *Scholder v. United States*, 428 F.2d 1123, 1126 n.2 (9th Cir. 1970).

Nevertheless, Jachetta attempts to bring his action within the scope of § 345's limited waiver of sovereign immunity by arguing that, "under a bundle of sticks theory of property law, his allotment has not been fully conveyed to him" because Parcel B is missing "rock, sand, and gravel, the essence of the surface estate." Jachetta's argument, however, does not

change the fact that he has been issued his allotment for Parcel B and that his complaint seeks only injunctive and monetary relief for the condition in which the allotment was conveyed to him rather than the issuance of an allotment. As the district court explained, Jachetta "has been issued his full allotment; his complaint centers around use of the allotment that he had not authorized."

### 3.   25 U.S.C. § 357

**[8]** Though 25 U.S.C. § 357 provides a limited waiver of sovereign immunity, this statute does not waive the BLM's sovereign immunity in this case. Section 357 allows a state to condemn "[l]ands allotted in severalty to Indians . . . for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned" and specifies that "the money awarded as damages shall be paid to the allottee." 25 U.S.C. § 357. When a state brings formal condemnation proceedings to acquire an Indian allotment, the United States is an indispensable party to that action because the United States remains "the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees."[1] *Minnesota v. United States*, 305 U.S. 382, 386 (1939). If the United States is not a party to the action, any judicial decision condemning the land "has no binding effect," so "the United States may sue to cancel the judgment and set aside the conveyance made pursuant thereto." *Id.* at 386 n.1.

**[9]** Because § 357 permits condemnation actions that cannot effectively proceed absent the United States, § 357 waives

---

[1]Once the Secretary of the Interior approves an Indian allotment application, the United States holds the allotted land in trust for 25 years "for the sole use and benefit of the Indian [allottee]." 25 U.S.C. § 348. At the end of this period, the United States must convey the allotment "in fee, discharged of said trust and free of all charge or incumbrance whatsoever" to the allottee. *Id.*

the government's sovereign immunity. *See Minnesota*, 305 U.S. at 388 ("It is true that authorization to condemn confers by implication permission to sue the United States."). But this waiver extends only to those actions that § 357 authorizes: formal condemnation proceedings in which *a state* seeks to acquire Indian allotments for a public purpose in exchange for monetary compensation. Jachetta, however, brings an inverse condemnation action, which § 357 does not authorize. As the Supreme Court has explained, "the term 'condemned' [in § 357] refers not to an action by a landowner to recover compensation for a taking, but to a formal condemnation proceeding instituted by the condemning authority." *United States v. Clarke*, 445 U.S. 253, 258 (1980). Because Jachetta is not subject to a formal condemnation proceeding, § 357 does not waive the BLM's sovereign immunity in this case. *Cf. Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 930 (10th Cir. 1975) ("If it could be said that there was a waiver contained in [§ ] 357 . . . it would extend only to condemnations for public purpose.").

4. 28 U.S.C. § 1343(a)(3)

**[10]** Title 28 U.S.C. § 1343(a)(3) grants district courts original jurisdiction over civil actions brought "[t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Because we fail to see how this text can be construed as an unequivocally expressed waiver of the government's sovereign immunity, we hold that 28 U.S.C. § 1343(a)(3) does not waive sovereign immunity. *See Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992) ("[G]eneral jurisdictional statutes cannot . . . waive the government's sovereign immunity."); *Salazar v. Heckler*, 787 F.2d 527, 528-29 (10th Cir. 1986) (holding that a similar subsection, 28 U.S.C. § 1343(a)(4), does not waive the government's sovereign immunity); *cf. Blatchford v. Native Vill. of*

*Noatak*, 501 U.S. 775, 786 (1991) (holding that the jurisdictional statute 28 U.S.C. § 1362 "does not reflect an 'unmistakably clear' intent to abrogate [state sovereign] immunity, made plain 'in the language of the statute' ").

### 5. 42 U.S.C. §§ 1983 and 1985

**[11]** Lastly, to the extent Jachetta argues that 42 U.S.C. §§ 1983 and 1985 waive the BLM's sovereign immunity, we disagree. We find no evidence in either statute that Congress intended to subject federal agencies to § 1983 and § 1985 liability. To the contrary, §§ 1983 and 1985 impose liability upon a "person," and a federal agency is not a "person" within the meaning of these provisions. *See Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998) ("We find no authority to support the conclusion that a federal agency is a 'person' subject to section 1983 liability, whether or not in an alleged conspiracy with state actors."); *Hoffman v. HUD*, 519 F.2d 1160, 1165 (5th Cir. 1975) ("[A] federal agency is . . . excluded from the scope of section 1983 liability."); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) ("The United States and other governmental entities are not 'persons' within the meaning of Section 1983.").

### B.  *State Sovereign Immunity*

**[12]** The Eleventh Amendment bars an action by a private citizen against a state "unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or [the] state has waived it." *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir 2010). To abrogate a state's sovereign immunity under § 5 of the Fourteenth Amendment, Congress's intent must be "unequivocally expressed." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (internal quotation marks omitted). Similarly, a state will be deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reason-

able construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotation marks and alteration omitted); *see also Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) ("A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute . . . [and] may not be implied." (citations omitted)).

Here, Jachetta argues that the Eleventh Amendment does not bar his action against Alaska because (1) the Eleventh Amendment does not bar an inverse condemnation action when the plaintiff lacks an alternative forum to pursue his constitutional claim; (2) the Eleventh Amendment does not apply to suits seeking the return of property; (3) 25 U.S.C. § 357 abrogates Alaska's Eleventh Amendment immunity; (4) Alaska has voluntarily waived its sovereign immunity by extracting gravel from Jachetta's allotment; (5) Alaska has waived its sovereign immunity by voluntarily choosing to participate in a federally funded scheme; and (6) Jachetta is suing on behalf of the United States. We address each argument in turn.

### 1. The Lack of an Alternative Forum for Takings Claims

**[13]** Jachetta argues that the Eleventh Amendment cannot bar an inverse condemnation action where, as here, the plaintiff lacks an alternative forum to pursue his constitutional claim. We have held that the Eleventh Amendment bars inverse condemnation actions brought against a state in federal court. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 955 (9th Cir. 2008). However, we have also held that although the Eleventh Amendment bars such actions in *federal court*, "sovereign immunity may not stand in the way of recovery in *state court*" because of the "self-executing" character of the Takings Clause. *Id.* at 954 (emphasis added). "[S]tate courts must . . . be available to adjudicate claims brought under the federal Takings Clause . . . . [T]his constitutionally enforced remedy against the States in state courts can comfortably co-exist with the Eleventh Amendment

immunity of the States from similar actions in federal court." *Id.* at 954-55; *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 528 (6th Cir. 2004) ("[W]here the Constitution requires a particular remedy, such as . . . through the Takings Clause . . . , the state is required to provide that remedy in its own courts, notwithstanding sovereign immunity."); *Manning v. N.M. Energy, Minerals & Natural Res. Dep't*, 144 P.3d 87, 95 (N.M. 2006) ("[T]he Takings Clause creates a cause of action against a state which is actionable in state court and to which the state may not assert immunity."); *SDDS, Inc. v. State*, 650 N.W.2d 1, 9 (S.D. 2002) ("[T]he Eleventh Amendment will not immunize states from compensation specifically required by the Fifth Amendment."). Relying on this latter holding, Jachetta argues that if the Eleventh Amendment bars his inverse condemnation action in federal court, he will have no judicial forum in which to pursue his self-executing takings claim. That is so, Jachetta asserts, because his inverse condemnation action requires the adjudication of competing rights in Indian allotments, something that only federal courts may do.

We acknowledge the possibility that if Jachetta brings his inverse condemnation action in state court, that court may dismiss the action for lack of subject matter jurisdiction. Congress granted jurisdiction to certain states, including Alaska, "over civil causes of action between Indians or to which Indians are parties which arise in . . . Indian country." 28 U.S.C. § 1360(a). However, Congress reserved for the federal courts jurisdiction over questions involving "the ownership or right to possession" of property that "belong[s] to any Indian" and "that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States." *Id.* § 1360(b). As interpreted by the Alaska Supreme Court, § 1360(b) deprives state courts of jurisdiction over actions in which they "would have to resolve competing interests to Native allotment land." *Foster v. State*, 34 P.3d 1288, 1291 (Alaska 2001); *see also Heffle v. State*, 633 P.2d 264, 269 (Alaska 1981).

Here, Alaska argues that it was authorized to remove gravel from Parcel B under a federal permit that it was issued in 1968, three years before Jachetta filed his allotment application. Jachetta replies that, even though he applied for his Native allotment in 1971, his interest in Parcel B relates back to 1960, when he first occupied the land, and trumps any interest Alaska may have acquired by virtue of a federal permit in 1968. Though we have no occasion to address the merits of these contentions, we acknowledge that Jachetta's inverse condemnation action may require the state court "to resolve competing interests to Native allotment land" and, accordingly, could be dismissed by Alaska courts for lack of subject matter jurisdiction. *Foster*, 34 P.3d at 1291.

**[14]** Nevertheless, we hold that Jachetta's remedy lies in state court. Of the two possible fora in which Jachetta can bring his inverse condemnation claim, the federal forum is clearly unavailable to him. *See Seven Up Pete*, 523 F.3d at 955 ("[E]very court of appeals to have faced this question has . . . held that the Eleventh Amendment bars Fifth Amendment reverse condemnation claims brought in federal district court."). Accordingly, Jachetta must file his inverse condemnation action against Alaska in state court and afford that court an opportunity to address the interplay between 28 U.S.C. § 1360(b) and the constitutionally mandated remedy for Takings Clause violations. At that point, the state court can decide whether § 1360(b) deprives it of jurisdiction over Jachetta's inverse condemnation claim and, if it does so, whether § 1360(b) is constitutional in light of the self-executing nature of the Takings Clause. If the state court nevertheless dismisses Jachetta's action for lack of jurisdiction, Jachetta can then seek review in the United States Supreme Court.

2.  The Eleventh Amendment and Suits Seeking the Return of Property

Jachetta argues that his case falls within the *United States v. Lee*, 106 U.S. 196 (1882), and *Malone v. Bowdoin*, 369

U.S. 643 (1962), exception to state sovereign immunity. Because Jachetta did not present this argument to the district court, it has been waived. *See Smith*, 194 F.3d at 1052.

But in any event, Jachetta's argument lacks merit. Under *Lee* and *Malone*, the Eleventh Amendment does not bar "suits in which a plaintiff asserts a claim for return of his property . . . if the claim . . . [is] based on the public official having acted beyond his statutory authority . . . or [if] the plaintiff's theory [is] that the action leading to the government's possession of the property was constitutionally infirm." *Taylor v. Westly*, 402 F.3d 924, 933 (9th Cir. 2005). Here, however, Jachetta does not seek the return of his property—i.e., the gravel extracted from his allotment. Rather, he seeks monetary compensation from the State equivalent to the fair market value of the gravel. Accordingly, the *Lee-Malone* exception to sovereign immunity does not apply to Jachetta's case. *See id.* at 935 (holding that the *Lee-Malone* exception does not apply when "the plaintiffs unquestionably [seek] money that belong[s] to the government, but to which the plaintiffs assert[ ] an entitlement").

### 3.  25 U.S.C. § 357

**[15]** Jachetta next argues that § 357 abrogates Alaska's Eleventh Amendment immunity. As we pointed out previously, § 357 provides that lands allotted to Indians "may be condemned [by the state] for any public purpose" the same as lands owned in fee on the condition that "the money awarded as damages shall be paid to the allottee." 25 U.S.C. § 357. "Congress, using its authority to enforce by legislation the provisions of the . . . Fourteenth Amendment, can 'abrogate' Eleventh Amendment . . . immunity by expressing its intent to do so with sufficient clarity." *Taylor*, 402 F.3d at 930. "The requirement of a clear statement in the text of the statute ensures that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter." *Sossamon*, 131 S. Ct. at 1661. On its face, § 357 contains no

clear statement indicating Congress's desire to abrogate a state's sovereign immunity. Indeed, the statute addresses only the ability of a state to bring an action in condemnation and says nothing about the ability of others to sue that state. Additionally, as we have previously explained, the Supreme Court has held that, although § 357 authorizes formal condemnation proceedings by states, it does not authorize inverse condemnation actions by landowners to recover just compensation. *See Clarke*, 445 U.S. at 255-58. Under these circumstances, we cannot conclude that § 357 "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States." *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Sossamon*, 131 S. Ct. at 1661 ("Without such a clear statement from Congress and notice to the States, federal courts may not step in and abrogate state sovereign immunity.").

### 4. Alaska's Extracting Gravel from Jachetta's Allotment

Jachetta summarily argues, without any citation to authority, that Alaska has voluntarily waived its sovereign immunity by accepting the benefits of Jachetta's allotment—i.e., by extracting gravel from Parcel B. This argument fails because extracting gravel from Parcel B is not a clear declaration by Alaska that it consents to be sued. *See Sossamon*, 131 S. Ct. at 1658 ("Only by requiring [a] clear declaration by the State can we be certain that the State in fact consents to suit." (internal quotation marks omitted)).

### 5. Alaska's Participation in the Construction of the Trans-Alaska Pipeline

Jachetta next argues that Alaska has waived its sovereign immunity by voluntarily choosing to participate in a federal project—the Trans-Alaska Pipeline. Specifically, Jachetta claims that Alaska's consent to suit derives from 43 U.S.C. § 1652(e), which, according to Jachetta, conditions Alaska's participation in the construction of the pipeline on a waiver of

its Eleventh Amendment immunity. The statute does not support Jachetta's assertion. Section 1652(e) authorizes federal officers and agencies "to amend or modify any right-of-way, permit, lease, or other authorization issued under [Title 43, Chapter 34]" when "necessary to protect the public interest." Jachetta fails to explain how this language "unequivocally expresse[s]" Congress's desire to condition Alaska's participation in the construction of the pipeline on its consent to suit in federal court. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citation omitted).

**[16]** Nevertheless, Jachetta argues that his case is similar to *Islander East Pipeline Company, LLC v. Connecticut Department of Environmental Protection*, 482 F.3d 79 (2d Cir. 2006), where the Second Circuit held that Connecticut's voluntary participation in a federally regulated scheme waived the state's Eleventh Amendment immunity. In *Islander East*, however, the Natural Gas Act of 1938 specifically provided for "original and exclusive jurisdiction [in the court of appeals] over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval." *Id.* at 85. In light of this provision, the state "d[id] not dispute that by accepting a role as deputized regulator [in the federally regulated scheme], a state agrees to waive its immunity from suit." *Id.* at 90. By contrast, Jachetta fails to identify any similar statutory provision conditioning Alaska's participation in the construction of the Trans-Alaska Pipeline on Alaska's waiver of its sovereign immunity. Accordingly, Alaska's participation in this federally regulated scheme does not waive its sovereign immunity. *See Sossamon*, 131 S. Ct. at 1661 (rejecting the argument that recipients of federal funding are on notice that they are subject to suits for monetary damages); *Edelman*, 415 U.S. at 673 ("The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public

aid is not sufficient to establish consent on the part of the State to be sued in the federal courts.").

### 6. Suing on Behalf of the United States

Jachetta next argues that the Eleventh Amendment does not bar his action against Alaska because he is suing on behalf of the United States. Because the Eleventh Amendment does not bar suits by the United States government against a state, *see Monaco v. Mississippi*, 292 U.S. 313, 329 (1934), Jachetta contends the Eleventh Amendment cannot bar his action, which "assert[s] the government's pecuniary interest."

Jachetta has waived his argument both because he developed it for the first time in his reply brief, *see Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam), and because he did not present it to the district court, *see Smith*, 194 F.3d at 1052.

In any event, his argument is unpersuasive. Not only has Jachetta failed to cite anything authorizing him to assert the government's interests against the State of Alaska, but the authority we have found actually undermines his case. Indeed, the Supreme Court has expressed doubt "that sovereign exemption *can* be delegated—even if one limits the permissibility of delegation . . . to persons on whose behalf the United States itself might sue." *Blatchford*, 501 U.S. at 785. That is so, the Court explained, because "[t]he consent, 'inherent in the convention,' to suit by the United States—at the instance and under the control of responsible federal officers—is not consent to suit by anyone whom the United States might select; and even consent to suit by the United States for a particular person's benefit is not consent to suit by that person himself." *Id.*

## CONCLUSION

We hold that federal sovereign immunity bars Jachetta's inverse condemnation, injunctive relief, and civil rights viola-

tions claims against the United States, but that the FTCA may provide a waiver of the government's sovereign immunity for Jachetta's nuisance and breach of fiduciary duties claims. Additionally, we hold that the Eleventh Amendment bars Jachetta's action against Alaska in its entirety.

AFFIRMED in part, REVERSED in part, and REMANDED.

Costs on appeal are awarded to Alaska. The remaining parties shall bear their own costs.