Donnelly R. VILLEGAS, an enrolled
member of the Spokane Tribe
of Indians, Plaintiff,

v.

UNITED STATES of America; Department of the Interior; Bureau of Indian Affairs; Bureau of Land Management; Bureau of Safety and Environmental Enforcement (formerly the Minerals Management Service); Environmental Protection Agency; Office of Natural Resources Revenue; Lisa P. Jackson; Stan Speaks; Kenneth L. Salazar; Robert Abbey; James Watson; and Estate of Willard Sharpe, Defendants.

No. CV–12–0001–EFS.

United States District Court,
E.D. Washington.

Jan. 30, 2013.

Gabriel S. Galanda, Anthony Stephen Broadman, Ryan David Dreveskracht, Galanda Broadman PLLC, Seattle, WA, for Plaintiff.

Jody Helen Schwarz, Reuben S. Schifman, U.S. Department of Justice, Washington, DC, for Defendants.

### ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS

EDWARD F. SHEA, Senior District Judge.

### I. INTRODUCTION

This matter comes before the Court on Defendants United States of America, Department of the Interior ("DOI"), Bureau of Indian Affairs ("BIA"), Bureau of Land Management ("BLM"), Bureau of Safety and Environmental Enforcement ("BSEE"), Office of Natural Resources Revenue ("ONRR"), Environmental Protection Agency ("EPA"), Lisa P. Jackson, Stan Speaks, Kenneth L. Salazar, Robert Abbey, and James Watson's (collectively, "Federal Defendants") Motion to Dismiss, ECF No. 61. Federal Defendants contend that Plaintiff Donnelly Villegas's claims must be dismissed because Federal Defendants are immune from suit and have not waived sovereign immunity.

Additionally, Federal Defendants argue that each of the claims and requested relief sought by Plaintiff is independently barred. First, Federal Defendants contend that injunctive relief is foreclosed 1) pursuant to the jurisdictional constraints imposed by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675, and 2) because Plaintiff failed to join the Spokane Tribe, an indispensable party. Second, Federal Defendants contend that declaratory judgment is improper because the sole effect of such declaratory relief is to establish *res judicata* with respect to Plaintiff's separately-asserted Takings Clause claim. And lastly, Federal Defendants contend that each of Plaintiff's remaining claims, to the extent he seeks monetary damages, must be dismissed because: a) Plaintiff's Takings and contract claims are subject to the exclusive jurisdiction of the Court of Federal Claims; b) Plaintiff's tort claims are unexhausted and procedurally barred by the Federal Tort Claims Act (FTCA); and c) Plaintiff's claim for violations of the Administrative Procedures Act (APA) is unexhausted and insufficiently pled.

The Court concludes that CERCLA deprives this Court of jurisdiction to grant

Plaintiff the injunctive relief he seeks, as the requested relief constitutes a challenge to an ongoing removal or remedial action under CERCLA. The Court also concludes that Plaintiff is not entitled to declaratory relief because a) such relief is subsumed by his Takings claim and, if granted, would impermissibly short-circuit the exclusive jurisdiction of the Court of Federal Claims; b) Plaintiff lacks standing to seek equitable relief for past injuries; and c) declaratory relief is not warranted in this case, as it will not resolve the parties' dispute or terminate the proceedings.

The only remaining form of relief Plaintiff seeks in his Complaint is monetary damages; accordingly, the Court analyzes his remaining claims in that context. First, Plaintiff's Takings and contract claims are only cognizable before the Court of Federal Claims, because Federal Defendants have not waived sovereign immunity for such claims in this Court. Second, Plaintiff's tort claims are barred because the FTCA imposes an administrative-exhaustion prerequisite on its sovereign immunity waiver, and Plaintiff has not shown that his tort claims are administratively exhausted. Third, Plaintiff's claim for APA violations must also be dismissed because a) Plaintiff's Complaint fails to sufficiently identify the alleged APA violations; and b) Plaintiff's claim is predicated on arbitrary and capricious agency action, but Plaintiff has not identified any "final" agency action which is subject to the APA's waiver of sovereign immunity. Finally, although Plaintiff may have an accounting for profits claim, he failed to assert this claim in his Complaint.

Because Federal Defendants have not waived sovereign immunity before this Court with respect to the claims and relief asserted in Plaintiff's Complaint, the Court grants Federal Defendant's Motion to Dismiss, ECF No. 61, and dismisses the Complaint without prejudice.

## II. BACKGROUND

### A. Factual History[1]

Plaintiff Donnelly Villegas is an enrolled member of the Spokane Tribe of Indians (hereinafter, "Spokane Tribe"), a federally-recognized Indian tribe. The Spokane Indian Reservation was created on January 18, 1881, by Executive Order of President Rutherford B. Hayes. In 1902, Congress opened the Spokane Reservation to mineral development, providing that the Reservation "shall be subject to entry under the laws of the United States in relation to the entry of mineral lands." Act of May 27, 1902, ch. 888, 32 Stat. 245 (1902). In a Joint Resolution adopted later that year, Congress directed the Secretary of the Interior to "make allotments in severalty to the Indians of the Spokane Indian Res-

---

1. The facts set forth herein are primarily, but not exclusively, based on the factual allegations contained in the Complaint, ECF No. 1. As discussed in parts III.A–B and IV.C.1, *infra*, the primary legal question underlying Federal Defendants' motion to dismiss is whether the Court possesses subject matter jurisdiction. In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court is not limited to the allegations in the Complaint but may also consider materials extrinsic to the pleadings. *Ass'n. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir.2000). Review of such extrinsic evidence does not convert the motion to dismiss into a motion for summary judgment. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Therefore, for the limited purpose of deciding the instant motion, the Court adopts as true the factual allegations contained in the Complaint as well as certain supplemental, *non-contradictory* facts asserted in Federal Defendants' motion that pertain to CERCLA remediation efforts at the Midnite Mine site. *See* ECF No. 62, at 9–12.

ervation in the State of Washington, and upon the completion of such allotments[,] the President shall by proclamation give public notice thereof, whereupon the lands in said reservation not allotted to Indians or used or reserved by the Government, or occupied for school purposes, shall be opened to exploration, location, occupation, and purchase under the mining laws." Cong. J. Res. 31, 32 Stat. 744 (1902). In 1908, Congress directed the Secretary of the Interior to make allotments to all members of the Spokane Tribe who had not yet received allotments, and to sell and dispose of all unallotted "surplus" lands for use in agriculture and timber production. Act of May 29, 1908, 35 Stat. 458 (1908). This process of allotment and distribution was consistent with the United States' policy of "assimilation" of Indian tribes in the period surrounding the turn of the nineteenth century.

### 1. Allotment No. 156

In 1910, pursuant to the Acts of Congress described above, Allotment No. 156 was issued to Edward Boyd. The issuing instrument stated that 1) the United States would hold the land in trust for twenty-five years for the sole use and benefit of Mr. Boyd, and 2) that at the end of that period, the United States would convey title to the 120–acre property to Mr. Boyd or his heirs. Mr. Boyd died intestate in 1939, at which time his interest in the allotment was divided between his spouse and six children. By 1956, following the death of a number of Mr. Boyd's children, the interests in the allotment became concentrated in Lucy and Richard Boyd.

In a 1973 order entered in an otherwise-unspecified adjudication titled *In the Matter of the Estates of Richard Boyd*, a one-half interest in Allotment No. 156 was awarded to the Spokane Tribe, and the remaining 60–acre interest was divided equally between Plaintiff and his sister, Ortencia Ford. As part of this probate settlement, Plaintiff was also awarded an interest in stockpiles of high-grade uranium located in Ford, Washington. The funds derived from these interests were to be paid into a trust account for the benefit of Plaintiff and his sister, managed by William Sharpe[2] and ONB Bank and Trust until October 1974.

Fee title to the land was never transferred to Mr. Boyd or his heirs;[3] however, Plaintiff retains his one-half interest in a 60–acre portion of Allotment No. 156, which is currently held in trust by the United States.

### 2. Establishment of the Midnite Mine

In 1954, Defendant Dawn Mining Company, LLC (hereinafter "Dawn Mining")

---

2. The Complaint names the Estate of Willard Sharpe as a Defendant, in both the caption and in its recitation of the parties. *See* Compl. ¶¶ 2, 20, at 2, 6. However, the Complaint alleges that a person named William Sharpe, who is otherwise not identified as a Defendant to this action, as a person responsible for the mismanagement of Plaintiff's trust account. *See id.* ¶¶ 43, 86, 104–106, at 13, 21, 26. Because the Complaint identifies William Sharpe as the party responsible for alleged wrongdoing, the Court refers to him by that name.

3. Although Plaintiff alleges the failure to transfer fee title constitutes a "direct breach of the statement issuing the Allotment," Compl. ¶ 74, at 19, Federal Defendants argue that subsequent Executive Orders have indefinitely extended the trust period for allotments made to Indians of the Spokane Reservation. *See* ECF No. 62, at 3 n. 3. The Court need not presently resolve this dispute, however, as the identity of the party who should hold title to Allotment No. 156 does not bear on the Court's resolution of the instant motion to dismiss.

leased approximately 571 acres of the Spokane Indian Reservation from the United States for the purpose of mining uranium. Floyd H. Phillips, Superintendent of Defendant DOI's Colville Indian Agency, entered into the lease "for and on behalf of the Spokane Tribe of Indians." Compl. ¶ 33, at 11. The 1954 lease included unallotted land that was part of the original Spokane Reservation, as well as the entirety of Allotment No. 156. In 1956, the Superintendent of the Colville Indian Agency again leased the allotment to Dawn Mining and Newmont USA Ltd. (hereinafter "Newmont") for a period of 15 years because "the individual Indian ownership was not entirely clear due to pending probate." Id. ¶ 35. Both leases were approved by Defendant BIA's Acting Area Director. Mr. Boyd's heirs were neither consulted about nor informed of either lease.

The 1956 lease required Dawn Mining and Newmont to submit monthly reports to the Superintendent of the Colville Indian Agency and to pay annual rents and royalties directly to the Superintendent, who would then issue rents and royalties to the allottees. The Superintendent was also tasked with directing audits of each lessee's accounts and books, while the Mineral Management Service was tasked with conducting audits of the rents and royalties paid to the Colville Indian Agency. Both the 1954 and 1956 leases also provided the Secretary of the Interior with the authority to 1) suspend mining operations, 2) collect a bond, 3) inspect the property, 4) approve the lessee's attempts to terminate the lease upon showing that full provision had been made for the conservation and protection of the property, and 5) terminate each lease for violations of the lease's terms and conditions. In 1964, Mr. Boyd's heirs and Defendant ONB Bank and Trust entered into a ten-year mining lease with Dawn Mining and Newmont under the same terms as the 1956 lease. The site leased by Dawn Mining and Newmont was developed into the "Midnite Mine."

### 3. Conclusion of Mining Operations; EPA Superfund Cleanup

In 1981, the Midnite Mine closed. Due to radioactive ore and toxic metals that were extracted during the prior quarter-century of mining operations, the land surrounding the mine—including Allotment No. 156—was heavily contaminated. A scientific model used by EPA concluded that "someone living on food gathered in the [nearby area] and using the water for sweat lodges had a [20 percent] chance of getting cancer from the added radiation." Compl. ¶ 70, at 18–19 (citing Warren Cornwall, *Radioactive Remains: The Forgotten Story of the Northwest's Only Uranium Mines*, Seattle Times, Feb. 24, 2008, *available at* http://seattletimes.nwsource.com/html/pacificnw/2004191779_pacificpuranium24.html). In 2011, the BIA determined that portions of Allotment No. 156 could not be logged due to extensive environmental damage and radioactivity.

In July 1998, the EPA sought support to include the Midnite Mine on the Superfund National Priorities List (NPL) of sites eligible for cleanup funds. In May 2000, the Midnite Mine was listed on the NPL, and over the following years, EPA regularly shared information with and sought input from members of the Spokane Tribe on the cleanup effort. On October 5, 2005, EPA issued its proposed plan for the cleanup effort. After a 105–day comment period and three public meetings, EPA adopted its remediation plan. The Midnite Mine is currently the subject of a $152 million environmental cleanup project. In January 2012, Judge Quackenbush approved a consent decree between the United States, Dawn Mining, and Newmont

regarding their respective obligations to fund the environmental cleanup under CERCLA. *See United States v. Newmont USA Ltd.,* No. CV–05–020–JLQ, ECF No. 553 (E.D.Wash. Jan. 17, 2012).

### 4. Specific Disputes Concerning Allotment No. 156

From the inception of the Midnight Mine until its closure in 1981, Plaintiff contends that Defendants repeatedly deprived him of the royalties to which he was entitled. He also alleges that Federal Defendants breached their fiduciary duties to Plaintiff by improperly managing his assets, failing to adequately supervise other Defendants, and failing to adequately inform Plaintiff of the nature of his accounts and the uses of Allotment No. 156. Plaintiff's allegations of wrongdoing can be grouped into three categories: 1) mismanagement of his trust account, improper fees and deductions, and missing funds; 2) misappropriation and devaluation of uranium ore on the property; and 3) trespasses to and takings of his land.

*Trust Account, Deductions, & Missing Funds.* Defendants William J. Sharpe and ONB Bank and Trust were charged with managing a trust account on Plaintiff's behalf. The funds derived from Plaintiff's interests in Allotment No. 156 were to be deposited into that trust account until October 1, 1974. Plaintiff contends that the BIA actually continued to make payments into the account until March 1978; however, Plaintiff claims to never have received the excess payments. Plaintiff also alleges that certain fees have been deducted from the trust account without any explanation, and that for some of the deductions where an explanation has been provided on royalty ledgers issued by Federal Defendants, the explanations have been inexplicably redacted. According to

Plaintiff, Defendants Dawn Mining and Newmont paid rents and royalties directly to Federal Defendants, who failed to properly distribute monies owed to Plaintiff. Plaintiff also contends that Dawn Mining and Newmont improperly deducted mine reclamation and restoration costs and other services from Plaintiff's escrow account, in violation of federal law.

*Misappropriation & Devaluation of Ore.* Plaintiff avers that Dawn Mining and Newmont, under the supervision of Federal Defendants, devalued and improperly disposed of Plaintiff's assets, including mixing low-grade ore with high-grade ore and under-measuring the quantity of ore. According to Plaintiff, Federal Defendants processed or sold several stockpiles of uranium obtained from the Midnite Mine, for which Plaintiff has received little or no payment.

*Trespasses & Takings.* Plaintiff alleges that during 1961, the "posts marking the Allotment were moved from their original placement, thereby defrauding Plaintiff of the fruits of those more valuable lands...." Compl. ¶ 40, at 12. Plaintiff also contends that now-dismissed Defendant Washington Water Power/Avista ("WWP/Avista") constructed power lines over the Allotment with the knowledge of Federal Defendants. He claims that Federal Defendants are presently using a right-of-way through the Allotment without compensation.

## B. Procedural History

### 1. The Present Suit

Plaintiff filed the instant suit on January 3, 2012, naming Federal Defendants, Dawn Mining, Newmont, WWP/Avista, ONB Bank and Trust, and the Estate of Willard Sharpe as Defendants. Compl. ¶¶ 14–20,

at 5–7. Plaintiff brings seven[4] claims against Federal Defendants: 1) a Fifth Amendment Takings Clause claim; 2) breach of contract and related fiduciary duties; 3) fraud and constructive fraud; 4) breach of fiduciary duties based on Federal Defendants' trustee relationship with Plaintiff; 5) trespass and trespass to chattels; 6) tortious damage to the environment; and 7) numerous unspecified violations of the APA. *Id.* ¶¶ 72–117, at 19–28. Plaintiff seeks the following relief: 1) an injunction preventing Federal Defendants from "further damaging, devaluing, and interfering with Plaintiff's uranium and rights therein"; 2) an injunction preventing Federal Defendants from any "acts or omissions that affect the Plaintiff's rights" without prior consultation; 3) a declaratory judgment that the power lines installed over Allotment No. 156 constitute an unconstitutional taking; 4) actual damages; and 5) attorneys' fees and costs. *Id.* ¶¶ A–F, at 29.

At Plaintiff's request, the Court previously dismissed Defendant ONB Bank and Trust, ECF No. 17, and Defendant WWP/Avista, ECF No. 128, from this action. On May 17, 2012, the Court also dismissed Defendants Dawn Mining and Newmont, finding Plaintiff's claims against those Defendants to be barred by the applicable statute of limitations or otherwise lacking in sufficient factual support. ECF No. 116. On March 30, 2012, Federal Defendants filed the instant motion to dismiss. ECF No. 61.[5]

### 2. Court of Federal Claims Suit

On December 27, 2011, approximately one week before filing the instant suit, Plaintiff filed a near-identical suit in the Court of Federal Claims. *Villegas v. United States,* No. 11–903–LJB, ECF No. 1 (Fed.Cl. Dec. 27, 2011). Plaintiff's complaint in that case names the same Federal Defendants as those named in the Complaint here; it also asserts the same legal claims and seeks the same monetary relief, although it omits the equitable relief Plaintiff seeks in the instant suit. *Id.* Upon joint motion of Plaintiff and Federal Defendants, the suit before the Court of Federal Claims has been stayed pending final resolution of this case. *Id.,* ECF No. 15 (stayed June 4, 2012).

### 3. Cobell Class Action

Federal Defendants assert that Plaintiff is a class member in *Cobell v. Salazar,* a nationwide class-action suit alleging breach of fiduciary duties by the United States in mismanaging Indian trust assets. As part of the final settlement in that case, all class members agreed to release "any and all claims and/or causes of action that were, or should have been, asserted" in that suit. *Cobell v. Salazar,* Civ. No. 96–1285, ECF No. 3850 (D.D.C. July 27, 2011) (order approving settlement), *aff'd,* 679 F.3d 909 (D.C.Cir.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 543, 184 L.Ed.2d 370 (2012). At the time the instant motion to dismiss was filed, certain *Cobell* class members had petitioned for writs of certiorari from the U.S. Supreme Court;[6] thus, although Fed-

---

4. Plaintiff has pled Claims I–V, VII, and VIII; he omits a Claim VI.

5. The Court granted extensions to both Plaintiff and Federal Defendants for the filing of responsive memoranda. ECF Nos. 74 & 125. The motion was eventually noted for consideration without oral argument on August 29, 2012. Plaintiff and Federal Defendants have

since submitted several notices of supplemental authority, *see* ECF Nos. 148, 149, & 150, which the Court has considered in evaluating the instant motion.

6. After briefing on the instant motion to dismiss had concluded, the Supreme Court twice declined to grant certain *Cobell* class members' petitions for writs of certiorari. *Craven*

eral Defendants contend that some or all of the claims in the instant suit may be barred by the *Cobell* settlement, they acknowledge this argument will not be ripe until all appeals have been foreclosed.[7] ECF No. 61, at 13 n. 5. Plaintiff, on the other hand, disputes that he was provided with timely notice of the *Cobell* suit or settlement. ECF No. 118, at 13 n. 6.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction.... It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted). Jurisdiction is a threshold issue, and courts must address jurisdictional challenges before considering the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (soundly rejecting the approach taken by various lower courts in " 'assuming' jurisdiction for the purpose of deciding the merits"). Under Federal Rule of Civil Procedure 12, the Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1) (authorizing pre-answer dismissal based on lack of subject matter jurisdiction); *id.* 12(h)(3) (requiring a court to *sua sponte* dismiss an action if it "determines *at any time* that it

lacks subject matter jurisdiction" (emphasis added)). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may ... attack[ ] the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

Unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction enables a court to consider "affidavits or any other evidence properly before the court," including material extrinsic to the pleadings. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir.2000). Once a challenge to jurisdiction has been raised, the party opposing the motion to dismiss must " 'satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.' " *Id.* (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989)).

### B. Sovereign Immunity

 "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)) (internal quotations omitted). Waivers of sovereign immunity must be "unequivocally expressed in the statutory text[,] ... strictly construed in

---

*v. Cobell,* —— U.S. ——, 133 S.Ct. 543, 184 L.Ed.2d 370 (cert. denied Oct. 29, 2012); *Good Bear v. Cobell,* —— U.S. ——, 133 S.Ct. 593, 184 L.Ed.2d 389 (cert. dismissed Nov. 6, 2012).

7. Neither Federal Defendants nor Plaintiff provided substantive argument about the preclusive effects, if any, of the *Cobell* settlement

on Plaintiff's claims. If Plaintiff files an amended complaint and asserts a claim which Federal Defendants believe to be barred by that settlement, the parties shall—in briefing any subsequent motion to dismiss—address the scope of the *Cobell* settlement and whether Plaintiff is bound by it.

favor of the United States, and not enlarged beyond what the language of the statute requires." *United States v. Idaho*, 508 U.S. 1, 6–7, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993) (internal citations and quotations omitted); *see also Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir.2011). A suit against a federal agency or officer which seeks relief against the sovereign is, in effect, a suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Thus, the principles of sovereign immunity apply whenever a federal agency is sued. *Id.;* *see Beller v. Middendorf*, 632 F.2d 788, 796–98 (9th Cir.1980), *overruled on other grounds by Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

 Sovereign immunity is a jurisdictional bar: absent an unequivocal statutory waiver of sovereign immunity, courts lack jurisdiction to entertain a suit against the United States or its agencies. *Sherwood*, 312 U.S. at 586, 61 S.Ct. 767. For that reason, a motion to dismiss based on sovereign immunity is essentially a motion to dismiss for lack of subject matter jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988) ("The question [of] whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."). Plaintiff carries the burden to find and prove an explicit waiver of sovereign immunity. *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir.2007); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that because a plaintiff is the party seeking relief, "it follows that he must carry throughout the litigation the burden of showing that he is properly in court").

## C. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint if the complaint fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). At a minimum, a valid "claim for relief" must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

Although the Court must accept a plaintiff's allegations of fact as true, the Court need not accept as true the legal conclusions a plaintiff draws from such facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint need not contain "detailed factual allegations," but it must contain something beyond mere " 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action[.]' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and " 'naked assertion[s]' devoid of 'further factual enhancement,' " do not sufficiently state a claim, and therefore give rise to grounds for dismissal. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

## IV. DISCUSSION

Federal Defendants contend the Court lacks subject matter jurisdiction to entertain this suit because the United States has not waived sovereign immunity. The question of whether the United States has waived sovereign immunity depends as

much on the type of relief Plaintiff seeks as on the legal claims he asserts. Although Plaintiff seeks injunctive relief, declaratory judgment, and monetary damages, the Court concludes that Plaintiff is not entitled to pursue either injunctive or declaratory relief; therefore, Plaintiff's suit is only cognizable to the extent it seeks monetary damages. And because the United States has not waived sovereign immunity for Plaintiff's monetary-damages claims—at least, as long as such claims are pursued in this Court—the Complaint must be dismissed.

### A. Injunctive Relief

Plaintiff identifies two categories of acts by Federal Defendants which he seeks to enjoin: 1) any "further damaging, devaluing and interfering with Plaintiff's uranium and rights therein," Compl. ¶ A, at 29; and 2) "any acts or omissions that affect the Plaintiff's rights [in the Allotment] without first initiating meaningful, informed, and prior consultation," *id.* ¶ C.[8] Plaintiff cannot obtain such injunctive relief, however, because CERCLA restricts this Court's jurisdiction to entertain a suit which could interfere with the EPA's cleanup of the Midnite Mine site.

Section 104 of CERCLA authorizes the President of the United States, in response to a release or threatened release of a hazardous substance, to "remove [the substance] or . . . provide for remedial action . . . or take any other response measure . . . to protect the public health or welfare or the environment." 42 U.S.C. § 9604(a)(1). Following CERCLA's enactment, the President delegated these responsibilities and powers to the EPA. Exec. Order No. 12580, 52 Fed.Reg. 2,923 (Jan. 23, 1987); Exec. Order No. 12777, 56 Fed.Reg. 54,757 (Oct. 18, 1991); *see also* 40 C.F.R. § 300.100. EPA responses under CERCLA can be characterized as either "removal" or "remedial" actions, depending on the time-sensitive nature of the cleanup, the duration of the remedy, and the threat to public health. *See* 42 U.S.C. § 9601(25); 40 C.F.R. § 300.5; *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1227–28 (9th Cir.2005).

CERCLA contains a statutory provision that withdraws from federal courts all jurisdiction over any suit that challenges a CERCLA cleanup action: "[n]o Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under [Section 104 of CERCLA]." 42 U.S.C. § 9613(h).[9] This provision has been characterized by the Ninth Circuit as "a blunt withdrawal of federal jurisdiction." *Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214, 1220 (9th Cir.2011); *see also McClellan Ecological Seepage Situation v. Perry ("MESS")*, 47 F.3d 325, 328 (9th Cir.1995). Furthermore, CERCLA's broad jurisdictional bar applies to *any* suit that challenges *any* aspect of a CERCLA removal or remediation action, regardless of whether the suit purports to be based on CERCLA:

---

8. In his responsive memorandum, Plaintiff recasts his Complaint as seeking prospective, injunctive relief to compel Federal Defendants to perform legally-mandated duties. *See, e.g.*, ECF No. 118, at 15. However, a request for such relief appears nowhere in the Complaint; in fact, the equitable relief Plaintiff seeks in the Complaint is distinctly different. Plaintiff cannot assert new claims or request alternative relief in opposition to a motion to dismiss as a shortcut for amending his Complaint to assert the claims or relief he should have pled or intended to plead. *See Jachetta v. United States*, 653 F.3d 898, 906 (9th Cir.2011).

9. The statute lists five exceptions to the jurisdictional bar, none of which are relevant to the present suit.

Congress made a choice to protect the execution of a CERCLA plan during its pendency from lawsuits that might interfere with the expeditious cleanup effort. As we held in [*MESS*], where the EPA works out a plan, and a citizen suit seeks to improve on the CERCLA cleanup because it wants more, that constitutes interference. Such a claim would second-guess the parties' determination and thus interfere with the remedial actions selected.

True, plaintiffs seek only past penalties, not any additional requirements for the ongoing cleanup. But that demand is still a challenge.

*Pakootas*, 646 F.3d at 1220–21 (internal citations, quotations, and alterations omitted).

■ Federal courts therefore lack jurisdiction to hear a case if it "challenges" a remedial or removal action that the EPA has "selected." *See Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir.1995). The Ninth Circuit has adopted a broad test to determine whether a suit constitutes a "challenge" to a CERCLA action, inquiring only whether the lawsuit is simply "related to the goals of the cleanup." *Razore*, 66 F.3d at 239.

■ Federal Defendants argue that Plaintiff's requested injunctive relief constitutes a "challenge" to the EPA's remediation efforts at the Midnite Mine site because Plaintiff seeks to enjoin any damage to, interference with his rights in, or devaluation of the uranium located on Allotment No. 156. In a related case in this District, *United States v. Newmont USA Ltd.*, No. CV–05–0020–JLQ (E.D. Wash. filed Jan. 28, 2005), Judge Quackenbush approved a consent decree between the United States, Dawn Mining, and Newmont related to remedial action at the Midnite Mine site that included, *inter alia*, making existing mining pits suitable for disposal of ore stockpiles and backfilling ore into them. *Id.*, ECF No. 553–1, at 112–128 (Consent Decree Appx. A—Record of Decision). Furthermore, the EPA's Record of Decision regarding the superfund cleanup includes a number of limitations and restrictions on how the property may be used, including prohibitions on the "construction of any structure," "disturbance of the waste containment area," or "wells, borings, or excavations," that may adversely impact the effectiveness of the remedy and an absolute bar on any "vehicle access or other forms of transportation" throughout the Waste Containment Area. *Id.* at 125.

Plaintiff's desire to preserve the integrity and value of his uranium ore cannot be reconciled with the EPA's cleanup plan. As long as the CERCLA remediation efforts continue, Plaintiff may not seek a court-ordered preservation of uranium ore which is in part the subject of that remediation effort. Further, Plaintiff's request to enjoin Federal Defendants from any "acts or omissions" that affect his rights in Allotment No. 156 without "prior meaningful consultation" constitutes a direct challenge to the cleanup efforts: it would force the EPA to consult with Plaintiff about any action taken on the cleanup site that might "affect his rights." This type of sweeping injunction is precisely the sort of intermeddling "that might interfere with the expeditious cleanup effort." *MESS*, 47 F.3d at 329. CERCLA is intended to promote quick responses to serious environmental hazards, and "Congress [has] concluded that the need for such [responses] is paramount[;] peripheral disputes … may not be brought while the cleanup is in process." *Id.* CERCLA bluntly withdraws this Court's jurisdiction to grant Plaintiff

the injunctive relief he requests.[10]

## B. Declaratory Relief

■ Plaintiff also seeks equitable relief in the form of declaratory judgment: he asks the Court to "[d]eclare the construction of power lines over [Allotment No. 156] to be an unconstitutional taking in violation of the Fifth Amendment." Compl. ¶ B, at 29. This requested relief appears to be subsumed by Plaintiff's Takings claim, in which he alleges, *inter alia,* the following:

> At some unknown date, Federal Defendants allow Defendant Washington Water Power/Avista to construct power lines over Plaintiff's Allotment.
>
> . . .
>
> An unconstitutional taking of property and rights therein exists where the government restricts the use or value of property or physically withholds or invades one's property.
>
> Here, Federal Defendants have restricted the use and value of Plaintiff's Allotment, and physically invaded that property.

Compl. ¶¶ 77–80, at 20.

Plaintiff's request for declaratory judgment thus amounts to a request to decide the underlying merits of his Takings claim. A declaratory judgment, if granted, affords Plaintiff no meaningful legal right except to seek damages for the unconstitutional taking, which is the very same right he would possess if he prevailed on the merits of his Takings claim. The only apparent explanation for this unnecessary and duplicative request for declaratory relief is the one proffered by Federal Defendants: that Plaintiff has intentionally sought equitable

relief to avoid the jurisdiction of the Court of Federal Claims, where Plaintiff's Takings claim must otherwise lie. In fact, Plaintiff has already filed a near-identical suit in the Court of Federal Claims seeking monetary relief for his Takings claim. *Villegas v. United States,* No. 11–903–LJB, ECF No. 1 (Fed Cl. Dec. 27, 2011). Thus, the only apparent effect of granting the requested declaratory judgment here is to either a) allow Plaintiff to avoid the exclusive jurisdiction of the Court of Federal Claims, or b) to provide Plaintiff with a judgment he can use to establish *res judicata* on his Takings claim before that court. *See, e.g., McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 590–91 (9th Cir. 1983) ("The only value to appellants of the declaratory judgment they seek would be to have it serve as res judicata in the [Court of Federal Claims]."). Notably, Plaintiff does not respond to Federal Defendants' contentions about his motive for requesting declaratory relief.

A litany of federal courts have held that plaintiffs may not avoid the exclusive jurisdiction of the Court of Federal Claims by simply reframing their monetary claims as equitable claims. *See, e.g., id.* at 590 (citing *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981)); *Consol. Edison Co. v. United States,* 247 F.3d 1378, 1385 (Fed.Cir.2001) (en banc); *W. Shoshone Nat'l Council v. United States,* 357 F.Supp.2d 172, 175–176 (D.D.C.2004). In fact, the Ninth Circuit has expressly foreclosed this tactic, holding that "[a] party may not avoid the [Court of Federal Claims'] exclusive jurisdiction by framing an action against the federal government that appears to seek only equitable relief when the party's real effort is to obtain

10. In light of this conclusion, the Court need not reach the question of whether injunctive relief is also barred by Plaintiff's failure to join in this lawsuit the Spokane Tribe, whom

Federal Defendants contend are an indispensable party which cannot be joined due to tribal sovereign immunity.

[monetary] damages in excess of [the threshold which vests exclusive jurisdiction in that court]." *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir.1990).

The ultimate goal of Plaintiff's Complaint is apparently to obtain money damages; in addition to expressly seeking "actual damages," Compl. ¶ E, at 29, Plaintiff has pled specific causes of action based on monetary losses. *See, e.g.,* Compl. ¶ 108, at 26 ("As a result of these breaches of trust and fiduciary duties, Plaintiff has been denied at least $500,000.00 in royalties and other funds, very likely more."). Therefore, Plaintiff may not assert a declaratory judgment claim—particularly one that would have no legal significance outside the scope of his already-pled Takings claim—simply to avoid the exclusive jurisdiction of the Court of Federal Claims.

 There is an additional reason for denying Plaintiff's request for declaratory judgment. Declaratory judgment is "essentially an equitable cause of action," which the Court may "grant or withhold ... on the basis of traditional equitable principles." *Samuels v. Mackell,* 401 U.S. 66, 70, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Plaintiff lacks standing to seek equitable relief for wholly-past injuries. *See O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (concluding that the "basic requisites of the issuance of equitable relief" are "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law"). In addition, even for present injuries, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington,* 759 F.2d 1353, 1357 (9th Cir. 1985). Entering declaratory judgment here

is tantamount to deciding the merits of Plaintiff's Takings claim, nothing more. Whether that Takings claim is heard before this Court or the Court of Federal Claims, the ultimate remedy is damages. It strains credulity to suggest that Plaintiff would be content with declaratory judgment without seeking the logical outgrowth of that judgment: compensation. Rendering declaratory judgment here would not serve a useful purpose, and it would not terminate the proceedings. Accordingly, the Court exercises its discretion, *see id.* at 1356, to reject Plaintiff's request for declaratory relief.

## C. Other Relief

Having concluded that Plaintiff has not stated a valid claim for injunctive or declaratory relief, the only viable relief remaining in Plaintiff's Complaint is his requests for actual damages, attorneys' fees, and costs. *See* Compl. ¶¶ D & E, at 29. Assuming that each of his seven claims, if proven, entitle him to monetary relief, Plaintiff must demonstrate that Federal Defendants have waived sovereign immunity as to each claim. Federal Defendants, on the other hand, contend that none of the potential sovereign immunity waivers upon which Plaintiff relies apply in this case.

### 1. Total Waiver of Sovereign Immunity

██ To demonstrate that Federal Defendants have waived sovereign immunity, Plaintiff cites to a number of general subject matter jurisdiction statutes in his Complaint. And, in response to Federal Defendants' motion to dismiss, Plaintiff also cites to the Mandamus Act, 28 U.S.C. § 1361. Although a motion to dismiss based on sovereign immunity is functionally a motion to dismiss for lack of subject matter jurisdiction, *see McCarthy,* 850

F.2d at 560, subject matter jurisdiction and sovereign immunity are distinct concepts. *Dunn & Black, P.S.,* 492 F.3d at 1087 n. 2 (citing *Wilkerson v. United States,* 67 F.3d 112, 119 n. 13 (5th Cir. 1995)). In any action against the United States, a plaintiff must establish *both* subject matter jurisdiction *and* a waiver of sovereign immunity. *See Arford v. United States,* 934 F.2d 229, 231 (9th Cir.1991). To the extent Plaintiff conflates the two, his argument is unavailing.

### a. *Jurisdictional Statutes*

▮ Plaintiff first alleges jurisdiction and waiver under 28 U.S.C. § 1331 ("federal question" jurisdiction). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, § 1331 is a "grant[ ] of general jurisdiction and 'cannot be construed as authorizing suits . . . against the United States, else the exemption of sovereign immunity would become meaningless.'" *Dunn & Black, P.S.,* 492 F.3d at 1088 n. 3 (quoting *Geurkink Farms, Inc. v. United States,* 452 F.2d 643, 644 (7th Cir. 1971)). Although the statute may provide subject matter jurisdiction for Plaintiff's claims, it does not waive sovereign immunity for those claims.

▮ Next, Plaintiff alleges jurisdiction and waiver under 28 U.S.C. § 1332 ("diversity" jurisdiction).[11] Section 1332 establishes original jurisdiction for claims where complete diversity of citizenship between the parties exists, and the amount in controversy exceeds $75,000. However, § 1332 does not waive sovereign immunity. *See McMillan v. Dep't of the Interior,* 907 F.Supp. 322, 326 (D.Nev.1995). For that matter, § 1332 does not even establish general subject matter jurisdiction here, as it does not authorize suits against the United States or its agencies. *See Greenwich v. Mobil Oil Corp.,* 504 F.Supp. 1275, 1278 (D.N.J.1981).

▮ Finally, Plaintiff cites 25 U.S.C. § 345 as a basis for jurisdiction and waiver. Section 345 provides as follows:

> All persons . . . who are entitled to an allotment of land under any law of Congress, . . . or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled . . . may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant). . . .

25 U.S.C. § 345. Section 345 effectively confers jurisdiction to federal courts over two types of cases: 1) those "seeking the issuance of an allotment," and 2) those "involving the interests and rights of the Indian in his allotment . . . after he has acquired it." *Jachetta v. United States,* 653 F.3d 898, 906 (9th Cir.2011) (quoting *United States v. Mottaz,* 476 U.S. 834, 845, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986)) (internal quotations omitted). However,

---

**11.** Plaintiff incorrectly asserts that § 1332 authorizes supplemental jurisdiction over state-law claims. In fact, supplemental jurisdiction is authorized by 28 U.S.C. § 1367. Regardless, even if subject matter jurisdiction were proper under § 1367, it too does not waive sovereign immunity. *Dunn & Black, P.S.,* 492 F.3d at 1088 n. 3

critically, § 345 "waives [sovereign] immunity [but] only with respect to the former class of cases: those seeking an original allotment." *Jachetta,* 653 F.3d at 906 (quoting *Mottaz,* 476 U.S. at 845–46, 106 S.Ct. 2224); *see also Pinkham v. Lewiston Orchards Irrigation Dist.,* 862 F.2d 184, 187 (9th Cir.1988). As Federal Defendants correctly point out, Plaintiff has already acquired an allotment and has filed suit seeking to enforce his rights and interests in that allotment. *See, e.g.,* Compl. ¶ 1, at 1. Thus, because Plaintiff is not seeking the issuance of an allotment, § 345 does not waive sovereign immunity for the present suit.

### b. The Mandamus Act, 28 U.S.C. § 1361

■ Plaintiff claims that the Mandamus Act confers jurisdiction and waives sovereign immunity with respect to actions that seek mandamus as a remedy.[12] The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Although the Mandamus Act unquestionably confers subject matter jurisdiction, the various circuits of the Court of Appeals differ over whether the Act also waives sovereign immunity. *Compare, e.g., Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989) (concluding the Act does not waive sovereign immunity), *and Essex v. Vinal,* 499 F.2d 226, 231 (8th Cir.1974) (observing that "[i]t is well settled" that the Act does not waive sovereign immunity), *with Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1214 (4th Cir.1976) (concluding that "[i]t has long been accepted" that a suit to enjoin a federal official from ultra vires action is an exception to the sovereign immunity doctrine), *and Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir. 1979) (stating that mandamus "bypasses the obstacle of the doctrine of sovereign immunity"). Despite this split, however, the Ninth Circuit has unequivocally held that the Mandamus Act does *not* waive sovereign immunity.[13] *See White v. Adm'r of Gen. Serv. Admin.,* 343 F.2d 444, 447 (9th Cir.1965); *see also Smith v. Grimm,* 534 F.2d 1346, 1353 n. 9 (9th Cir.1976). Accordingly, Plaintiff may not rely on the Mandamus Act as waiving sovereign immunity for his suit.

### 2. Claim–Specific Waivers of Sovereign Immunity

Because Plaintiff has not demonstrated that either the general subject matter ju-

---

12. Fatal to Plaintiff's argument, however, is the fact that he does not explicitly seek mandamus as a remedy. His Complaint contains no reference to mandamus or the Mandamus Act; instead, in opposition to the instant motion to dismiss, Plaintiff first identifies the Act as a basis for concluding that Federal Defendants have waived sovereign immunity. Nevertheless, the Court addresses the merits of this contention.

13. Even if the Court concluded, despite controlling authority to the contrary, that the Mandamus Act waived sovereign immunity, Plaintiff is likely foreclosed from seeking mandamus as a remedy, for a number of reasons: 1) any claim for mandamus based on his present Complaint is not "clear and certain"; 2) the alleged duty he ascribes to Federal Defendants is not "so plainly prescribed as to be free from doubt"; and 3) Plaintiff cannot demonstrate that "no other adequate remedy is available." *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986) (concluding that mandamus is only available if all three requirements are satisfied). Regardless, the Court declines to evaluate the merits of Plaintiff's unpled mandamus claim, as the Mandamus Act does not waive sovereign immunity and the Court cannot "assume without deciding" jurisdictional questions to reach the merits of a claim. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

risdiction statutes or the Mandamus Act provide a total waiver of sovereign immunity, he must demonstrate that Federal Defendants have waived sovereign immunity for each of his specific claims. In that vein, Plaintiff identifies three potential statutory sources for sovereign immunity waivers: 1) the Tucker Act, 28 U.S.C. § 1491(a), and its companion, the Little Tucker Act, § 1346(a); 2) the FTCA, 28 U.S.C. §§ 2671–2679; and 3) the APA, 5 U.S.C. §§ 701–706. Accordingly, the Court assesses each of Plaintiff's claims in the context of these statutes to determine whether Federal Defendants have waived sovereign immunity.

### a. Unconstitutional Taking (Claim I)

In Claim I of his Complaint, Plaintiff alleges that that Federal Defendants have 1) deprived him of title to the allotment, 2) denied him access to stockpiled uranium ore, 3) authorized the installation of power lines across the property, 4) actively participated in or passively tolerated the movement of boundary posts marking the allotment, and 5) reduced the value of standing timber. Plaintiff contends these actions have resulted in an unconstitutional taking, in violation of the Fifth Amendment.

Claims for monetary damages based on Constitutional violations are cognizable under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, § 1346(a)(2). The Tucker Acts provide a statutory waiver of sovereign immunity and consent to suit for non-tort claims founded "upon the Constitution or any Act of Congress, or any regulation of an executive department . . . ." §§ 1346(a)(2) & 1491(a)(1). The Little Tucker Act waives sovereign immunity and grants concurrent jurisdiction to any district court and to the Court of Federal Claims, but only if the claim does not exceed $10,000. § 1346(a)(2); *see also United States v. Bormes,* —— U.S. ——,

133 S.Ct. 12, 16–17, 184 L.Ed.2d 317 (2012). If the claim exceeds $10,000, it falls within the scope of the Tucker Act, which waives sovereign immunity but grants exclusive jurisdiction to the Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *see also Bormes,* 133 S.Ct. at 16–17.

Although Plaintiff does not indicate the value of his Takings claim, it appears to exceed $10,000. The damages he has incurred from Federal Defendants' breach of fiduciary duties allegedly exceed $500,000. Compl. ¶ 108, at 26. He also alleges a taking of the entire allotment, through Federal Defendants' failure to transfer title of the property to him, and loss of various minerals and timber on the property. Therefore, given that his claim apparently exceeds $10,000, it falls under the Tucker Act, not the Little Tucker Act, and the United States has only waived sovereign immunity if Plaintiff brings his claim in the Court of Federal Claims. *Adeleke v. United States,* 355 F.3d 144, 152 (2d Cir.2004) ("Because [plaintiff] sues to recover substantially more than $10,000 . . . the Tucker Acts cannot provide the waiver of sovereign immunity necessary for him to pursue his claim in the district court.") (citing *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). In short, the Tucker Act does not waive sovereign immunity with respect to Plaintiff's Takings claim in this Court.

Moreover, Plaintiff's claim is not subject to the sovereign immunity waiver contained in the FTCA either. Even to the extent Plaintiff could recast his Takings claim as a "constitutional tort," the FTCA does not provide a waiver of sovereign immunity for federal constitutional torts:

Although . . . claims [for inverse condemnation, unconstitutional takings, and federal civil rights violations] may be

characterized as constitutional torts, they are not actionable under the FTCA because any liability would arise under federal rather than state law. Accordingly, the FTCA does not provide a waiver of sovereign immunity for these claims.

*Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir.2011) (citing *FDIC*, 510 U.S. at 478, 114 S.Ct. 996). Like the defendants in *Jachetta*, Federal Defendants' alleged liability arises from federal law: the U.S. Constitution. Accordingly, the FTCA does not waive sovereign immunity for Plaintiff's Takings claim.

■ Nor is Plaintiff's Takings claim subject to the APA's waiver of sovereign immunity. Agency action is only reviewable under the APA when "there is no other adequate [legal] remedy in a court." 5 U.S.C. § 704; *see also Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir.1998). Here, Plaintiff has not shown that the Court of Federal Claims is unable to provide an adequate remedy for his Takings claim, particularly as this Court has rejected Plaintiff's request for declaratory relief and found that the scope of his Takings claim is limited to monetary relief. Because the Court of Federal Claims can provide Plaintiff with an adequate remedy, the APA does not waive Federal Defendants' sovereign immunity. *See Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed.Cir.1994) (holding that "where agency action is otherwise reviewable in court and an adequate remedy is available in connection with that review, the APA's waiver of sovereign immunity under [§ ] 702 is not available").

In addition, the APA's sovereign immunity waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act impliedly forbids relief under § 702. *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir.1985). Thus, because Plaintiff's claim is cognizable under the Tucker Act, Federal Defendants' waiver of sovereign immunity is limited to the scope of the waiver contained in the Tucker Act. Plaintiff may not avail himself of the APA's waiver in § 702.

As Plaintiff has demonstrated no statutory waiver of sovereign immunity with respect to his Takings claim before this Court, Federal Defendants' assertion of sovereign immunity divests this Court of subject matter jurisdiction to entertain the claim.

 b. *Breach of Contract (Claim II)* [14]

■ Similarly to his Takings claim, Plaintiff's breach of contract claim falls squarely within the ambit of the Tucker Act, which grants the Court of Federal Claims exclusive jurisdiction and waives sovereign immunity for "any claim [in excess of $10, 000] against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).[15] Because Plaintiff

---

**14.** The Complaint identifies Claim II as a claim for breach of contract and breach of fiduciary duty. In this subpart, the Court only addresses the validity of the breach-of-contract portion of Claim II. The breach-of-fiduciary-duty portion of the Claim is discussed separately in part IV.C.2.d, *infra*.

**15.** Moreover, the Supreme Court has construed the Tucker Act as granting jurisdiction and waiving sovereign immunity *only* with respect to money damages, not for injunctive or declaratory relief. *See, e.g., United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (declaratory relief); *United States v. Jones*, 131 U.S. 1, 19, 9 S.Ct. 669, 33 L.Ed. 90 (1889) (injunctive relief). Thus, even if Plaintiff's claims for injunctive relief were not barred by CERCLA, they would be barred by the Tucker Act to the extent they arise from his breach of contract claims.

apparently seeks recovery in excess of $10,000, the Tucker Act does not waive sovereign immunity for Plaintiff's breach of contract claim before this Court. Nor, for that matter, does the FTCA. *See Woodbury v. United States,* 313 F.2d 291, 296 (9th Cir.1963) (holding that when an "action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the [ FTCA]"). And, as the Court has previously concluded, the APA's waiver of sovereign immunity does not apply when, as here, a claim falls within the scope of the Tucker Act. *See N. Side Lumber,* 753 F.2d at 1485. As Plaintiff has not identified a valid waiver of sovereign immunity with respect to his breach of contract claim before this Court, the Court lacks subject matter jurisdiction to hear the claim.

c. *Trespass/Trespass to Chattels (Claim V) and Tortious Damage to the Environment (Claim VII)*

 Tort claims against the United States are exclusively cognizable under the FTCA. *DSI Corp. v. Sec'y of Hous. & Urban Dev.,* 594 F.2d 177, 180 (9th Cir. 1979). By virtue of the FTCA, "Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 217–18, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008). Although that waiver does not extend to alleged constitutional violations, 28 U.S.C. § 2679(b)(2)(A), the FTCA unequivocally provides the exclusive source of subject matter jurisdiction, waiver of sovereign immunity, and remedies for tort claims against federal agencies or officials. 28 U.S.C. § 2679(b)(1); *see DSI Corp.,* 594 F.2d at 180; *Rasul v. Myers,* 563 F.3d 527, 528 n. 1 (D.C.Cir.2009).

Plaintiff does not explicitly invoke the FTCA in his Complaint; nonetheless, Plaintiff's trespass claim sounds in tort and therefore falls within the scope of the FTCA. *See Weiss v. Lehman,* 676 F.2d 1320, 1326 (9th Cir.1982). Plaintiff identifies no statutory or common law authority for his environmental damage claim; however, the language of his Complaint plainly marks the claim as sounding in tort. *See* Compl. ¶ 114, at 28 (alleging that, due to Federal Defendants' "tortious conduct, Plaintiff has suffered damage to his interest in the Allotment related to the environment"). Because the FTCA provides the exclusive source of jurisdiction and waiver for tort claims, *DSI Corp.,* 594 F.2d at 180, Plaintiff must rely on the FTCA's sovereign immunity waiver with respect to his trespass and environmental damage claims. He cannot invoke the waiver contained in the Tucker Act or the APA. *Id.*

 As a threshold matter, the FTCA's sovereign immunity waiver is subject to an indispensable prerequisite: administrative exhaustion. The FTCA bars claimants from bringing suit in federal court until all administrative remedies have been exhausted. *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). To assert a tort claim, a plaintiff must "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." 28 U.S.C. § 2675(a). This administrative exhaustion requirement applies "even when the FTCA itself precludes Government liability." *United States v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). Because administrative exhaustion is a prerequisite to suit under the FTCA, a failure to exhaust such remedies bars a plaintiff from relying on the FTCA's waiver of sovereign immunity. *Cf. Dunn & Black, P.S.,* 492 F.3d at 1089–91 (reaching

a similar conclusion that the Tucker Act's administrative-exhaustion requirement is a prerequisite to finding a waiver of sovereign immunity).

Plaintiff provides no evidence that he has presented or fairly exhausted his tort claims before any federal agency. His Complaint contains no assertion—nor does it contain any factual support for such an assertion—that he ever raised his claims in an administrative proceeding before any federal agency. Undeterred by this deficiency, Plaintiff cites to an unpublished case from the Western District of Oklahoma, contending that administrative exhaustion does not apply to certain claims under federal statutory or common law. *Tonkawa Tribe of Indians of Okla. v. Kempthorne*, No. CIV–06–1435–F, 2009 WL 742896 (W.D.Okla. Mar. 17, 2009). However, even assuming that Plaintiff's tort claims could be properly characterized as federal common law claims, the *Tonkawa Tribe* court did not cite to any authority supporting its puzzling conclusion that administrative exhaustion is not required for federal common law claims. Further, *Tonkawa Tribe* is inapposite here, as that court considered an accounting claim asserted under the APA, not a state-law-based tort claim under FTCA. And perhaps most fatal to Plaintiff's argument, following the conclusion of briefing on the instant motion, the Tenth Circuit expressly overruled *Tonkawa Tribe* on this very point. *Gilmore v. Weatherford*, 694 F.3d 1160, 1168 (10th Cir.2012).

■■■ Plaintiff also asserts, with no factual support, that "requiring Plaintiff to follow through with the remainder of [Federal] Defendants' procedure [to obtain accounting or comply with their own regula-

tions] would have been futile." ECF No. 118, at 51. Although futility is one generally-recognized exception to administrative exhaustion, it does not apply to the exhaustion requirement contained within the FTCA. *In re Katrina Canal Breaches Litig.*, 345 Fed.Appx. 1, 4–5 (5th Cir.2009). And even if it did, Plaintiff has not met the burden of showing that futility should excuse his failure to exhaust his tort claims here.

Federal Defendants contend that Plaintiff was notified of—and failed to pursue—administrative appeal rights pursuant to 43 C.F.R. §§ 4.310–4.340 before DOI. *See* Weiner Decl. ¶¶ 1–2, ECF No. 65, at 1. This contention apparently belies Plaintiff's threadbare assertion that Federal Defendants adopted a policy of not providing him with a mechanism to adjudicate his claims. In light of Plaintiff's apparent failure to exhaust administrative remedies, coupled with Plaintiff's tacit admission of this failure through his argument that exhaustion would have been futile, Plaintiff has not met the threshold exhaustion prerequisite of the FTCA's sovereign immunity waiver. Unless and until Plaintiff can demonstrate administrative exhaustion, the Court lacks subject matter jurisdiction over Plaintiff's tort claims.

### d. Breach of Fiduciary Duty (Claims II & IV) [16]

A claim for breach of fiduciary duty does not exclusively sound in contract or in tort. Instead, state common law determines on a case-by-case basis whether a breach-of-fiduciary-duty claim sounds in contract or tort; and that determination can depend, among other things, on the factual circumstances giving rise to the claim and the

**16.** The Complaint identifies Claim II as a claim for breach of contract and breach of fiduciary duty. In this subpart, the Court only addresses the validity of the breach-of- fiduciary-duty portion of Claim II. The breach-of-contract portion of the Claim is discussed separately in part IV.C.2.b, *supra*.

alleged source of the duty. *See, e.g., Jachetta,* 653 F.3d at 905 (identifying three possible sources of fiduciary duties under Alaska law and classifying claims arising from those sources as a tort claim, a contract claim, and a neither-here-nor-there hybrid claim, respectively).

Here, the Court need not conclusively determine whether Plaintiff's breach-of-fiduciary-duty claims should be classified, because regardless of the classification, the claims are barred. If Plaintiff's breach-of-fiduciary-duty claims are treated as contract claims, they are only cognizable before the Court of Federal Claims pursuant to the Tucker Act. *See Woodbury,* 313 F.2d at 296. If the claims are instead classified as tort claims, they are barred because they have not been administratively exhausted, as required by the FTCA. *See* 28 U.S.C. § 2675(a); *McNeil,* 508 U.S. at 113, 113 S.Ct. 1980. Thus, regardless of whether Plaintiff's breach-of-fiduciary-duty claims sound in contract or tort, the Court lacks subject matter jurisdiction to entertain them.

### e. *Fraud/Constructive Fraud (Claim III)*

Similarly, Plaintiff's claim for fraud and constructive fraud is also barred: whether that claim sounds in contract or in tort, the Court lacks subject matter jurisdiction to hear the claim. In addition, Plaintiff's fraud claim is also barred by 28 U.S.C. § 2860(h), which specifically excludes from the FTCA's jurisdictional grant and sovereign immunity waiver "[a]ny claim arising out of ... misrepresentation, deceit, or interference with contract rights[.]" The Court therefore lacks subject matter jurisdiction over Plaintiff's fraud and constructive fraud claim.

### f. *APA Violations (Claim VIII)*

Finally, Plaintiff alleges a number of vague, unspecified violations of the APA in his Complaint:

By failing to meaningfully consult with Plaintiff, during the reclamation and restoration process as well as when taking other actions throughout much of the life of Plaintiff's interest in the Allotment, Federal Defendants have violated numerous federal laws, regulations, and nondiscretionary mandates including ... numerous agency-specific laws, regulations ... nondiscretionary mandates[,] and the federal common law. These acts and/or omissions resulted in numerous arbitrary and capricious decisions[.]

Compl. ¶¶ 116–117, at 28.

 It is axiomatic that a complaint must " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The above allegation from the Complaint is precisely the sort of "naked assertions devoid of further factual enhancement," that the Supreme Court has found insufficient in an initial pleading. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Plaintiff does not identify any specific agency action or inaction which constitutes "arbitrary and capricious" decision-making; for that matter, Plaintiff does not specifically identify which of Federal Defendants violated the APA, when they did so, or how. Federal Defendants cannot adequately determine from this allegation which agency action purportedly violated the APA; thus, Fed-

eral Defendants cannot be said to have received fair notice of Plaintiff's claim.

In his opposition to the instant motion, Plaintiff identifies several federal statutes and regulations that he alleges Federal Defendants have violated and for which he alleges the APA provides a remedy. However, these statutes and regulations are not cited or referred to in the Complaint. If Plaintiff intends to rely on violations of these statutes as a basis for his claim, he must properly identify and provide the necessary factual support for such a claim in his Complaint. Raising these authorities and factual allegations for the first time in opposition to the instant motion to dismiss is insufficient to fairly present his claim to this Court. *See Navajo Nation v. U.S.F.S.*, 535 F.3d 1058, 1079 (9th Cir.2008); *cf. Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (internal quotations omitted)). An eleventh-hour responsive pleading to avoid a motion to dismiss cannot and does not substitute for a proper, well-pled complaint.

Even assuming that Plaintiff had properly pled claims based on violations of federal statutes and regulations, it is unclear whether the APA waives sovereign immunity with respect to such claims. The APA waives sovereign immunity for suits against federal agencies "when an individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of the relevant statute.'" *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1103 (9th Cir.2007) (quoting 5 U.S.C. § 702). The Ninth Circuit has concluded that this waiver is subject to other limitations contained in the APA, including § 704's requirement of "final agency action." *See, e.g., Gallo Cattle Co. v. U.S.D.A.*, 159 F.3d 1194, 1198 (9th Cir. 1998). However, there is an acknowledged intra-circuit split whether § 702 waives sovereign immunity not just for final agency action under § 704, but also, more broadly, for any action "seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable." *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir.1989); *see also E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1086 (9th Cir.2010) (acknowledging but declining to resolve split between *Gallo Cattle* and *Presbyterian Church*). Under *Presbyterian Church*, § 702's waiver of sovereign immunity could potentially extend to any equitable claim for wrongs attributable to federal agencies.

At the present, the Court need not resolve the split and decide whether to apply the holding from *Gallo Cattle Co.* or *Presbyterian Church*. Plaintiff's claim specifically rests on "numerous arbitrary and capricious decisions" by agencies in violation of § 706. *See* Compl. ¶ 117, at 28. As the claim therefore falls under the "general [§ 706] review provisions of the APA, the 'agency action' in question must be a 'final agency action' [under § 704]." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). As currently pled, Plaintiff's claim for APA violations requires a showing of final agency action before Federal Defendants can be deemed to have waived of sovereign immunity.

To demonstrate final agency action, Plaintiff must show that either the agency reached the "consummation" of its decision-making process, or the agency action determined the "rights and obligations" of the parties or is one from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137

L.Ed.2d 281 (1997). Fundamentally, an agency action is not final until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros,* 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). "When an 'agency rule dictates that exhaustion of remedies is required, the federal courts may not assert jurisdiction to review agency action until the administrative appeals are complete.' " *Timbisha Shoshone Tribe v. Salazar,* 697 F.Supp.2d 1181, 1188 (E.D.Cal.2010) (quoting *White Mountain Apache Tribe v. Hodel,* 840 F.2d 675, 677 (9th Cir.1988)).

BIA regulations provide that "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704[.]" 25 C.F.R. § 2.6(a). The Code of Federal Regulations establishes the chain of authority to decide appeal of agency decisions, including agency inaction. *See, e.g.,* 25 C.F.R. §§ 2.3, 2.4(a), 2.6(a), 2.8. Plaintiff has not demonstrated that he properly *raised* his allegations of APA violations at any level of BIA review, much less exhausted them. Accordingly, the violations he alleges do not, as pled, constitute final agency action within the meaning of 5 U.S.C. § 704. His failure to properly pursue agency remedies renders § 702's waiver of sovereign immunity inapplicable, and the Court therefore lacks jurisdiction to hear his APA claim. *See Stock W. Corp. v. Lujan,* 982 F.2d 1389, 1393–94 (9th Cir.1993) ("On three occasions, we have upheld the dismissal of lawsuits challenging BIA decisions under the [APA] on the ground that the plaintiff failed to take the required administrative appeal. In so doing, we have noted the jurisdictional nature of the administrative appeal requirement." (citations omitted)).

### g. *Accounting Claim*

■ A claim of accounting for profits may be asserted to protect Indian lands from trespass. *See U.S. v. Pend Oreille Pub. Util. Dist. No. 1,* 28 F.3d 1544, 1549 n. 8 (9th Cir.1994) (citing *United States v. Santa Fe Pac. R.R.,* 314 U.S. 339, 359, 62 S.Ct. 248, 86 L.Ed. 260 (1941)). Plaintiff belatedly attempts, in his opposition to the instant motion, to assert an accounting claim, *see, e.g.,* ECF No. 118, at 46l; however, such a claim does not appear in the Complaint. In fact, the only reference to a possible accounting claim appears in the context of Plaintiff's breach-of-fiduciary-duty claim, in which he asserts that he cannot quantify his losses "without a true accounting of [certain] records." *Id.* ¶ 108, at 26. This reference to "accounting", however, is simply too oblique to adequately place Federal Defendants on notice that Plaintiff intended to assert a claim for accounting. If Plaintiff seeks to assert a cause of action, he must plainly and specifically state it. *See O'Guinn v. Lovelock Corr. Ctr.,* 502 F.3d 1056, 1060 (9th Cir. 2007) ("[C]ourts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action." (internal quotation marks omitted)); *see also Jachetta,* 653 F.3d at 906. As Plaintiff omitted an accounting claim from his Complaint, he may not now rely on it to oppose Federal Defendants' motion to dismiss.

### V. CONCLUSION

The injunctive relief Plaintiff seeks is barred by CERCLA. The declaratory relief he seeks is foreclosed by controlling precedent. To the extent he seeks nonequitable relief, he has failed to demonstrate a valid waiver of sovereign immunity in this Court. And his accounting for profits claim, to the extent he may have one, was not adequately pled in his Com-

plaint. Accordingly, the Court lacks subject matter jurisdiction to entertain this suit, and must dismiss the Complaint.

The Court cannot, however, summarily pronounce that Plaintiff is incapable of pleading some combination of claims and relief for which Federal Defendants have waived sovereign immunity. He just has not done so in his present Complaint. **Accordingly, the Court grants Plaintiff leave to file an amended complaint, consistent with the above rulings, *within THIRTY (30) DAYS of the date of this Order.***

If Plaintiff files an amended complaint, and if Federal Defendants again seek dismissal, the Court asks both parties to incorporate by reference, to the extent possible, the authorities and arguments they have already raised in briefing the instant motion. **Absent a motion filed at least five (5) days in advance of the relevant pleading deadline, with particularly good cause shown, the Court will not grant further extensions of page limits for any memoranda filed in support of or opposition to pre-answer dispositive motions.**

Accordingly, **IT IS HEREBY ORDERED:**

1. Federal Defendants' Motion to Dismiss, **ECF No. 61,** is **GRANTED.**

2. The Complaint, **ECF No. 1,** is **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff is granted leave to file an amended complaint, consistent with the above rulings, within **thirty (30) days of the date of this Order.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.